**SLAGLE, Petitioner,**

v.

**The STATE of Ohio, Respondent.**

2008-Ohio-593.]

Court of Common Pleas of Ohio,
Clermont County.

No. 2008 CVH 00037.

Decided Feb. 1, 2008.

Michael L. Slagle, pro se.

Donald W. White, Clermont County Prosecuting Attorney, and William Ferris, Assistant Prosecuting Attorney, for respondent.

McBRIDE, Judge.

{¶ 1} This cause is before the court on a petition to contest reclassification of the petitioner's sex offender status pursuant to R.C. 2950.031(E).

{¶ 2} The court scheduled and held a hearing on the petition on January 14, 2008. At the conclusion of the hearing, the court took the issues raised by the petition under advisement.

{¶ 3} Upon consideration of the petition, the record of the proceeding, the oral and written arguments of the parties, the evidence presented for the court's consideration, and the applicable law, the court now renders this written decision.

## FACTS OF THE CASE AND PROCEDURAL BACKGROUND

{¶ 4} On February 26, 2002, a judgment entry finding the petitioner, Michael Slagle, guilty of the offense of unlawful sexual conduct with a minor in violation of R.C. 2907.04 was filed in Clermont County Municipal Court. The petitioner was sentenced to 120 days in the Clermont County Jail, with 119 of those days suspended, and the petitioner was ordered to pay a fine of $500, with $250 of that fine suspended. Additionally, the petitioner was placed on probation for two years.

{¶ 5} In November 2002, the petitioner was classified as a sexually oriented offender, which required him to register his address with the sheriff of the county of his residency annually for ten years.

{¶ 6} On December 1, 2007, the petitioner received a notice of new classification and registration duties from the Ohio Attorney General.[1] This notice

---

1. Petition to Contest Reclassification.

informed the petitioner that beginning January 1, 2008, his new classification status is that of a Tier I sex offender under the implementation of Ohio Senate Bill 10.[2] A Tier I sex offender is required to register with the sheriff annually for 15 years.

{¶ 7} The petitioner filed the present petition with this court, requesting a hearing to contest the application of the new registration requirements to him pursuant to R.C. 2950.031(E). Additionally, the petitioner filed a short two-page memorandum of law that challenges the new classification laws on the following bases: (1) violation of the separation of powers, (2) violation of Article II, Section 28 of the Ohio Constitution, which prohibits retroactive laws, (3) violation of the Ex Post Facto clause of the United States Constitution and the Double Jeopardy clauses of the United States and Ohio Constitutions, and (4) breach of the plea agreement.

## LEGAL ANALYSIS

{¶ 8} The petitioner's action represents the first of several petitions of this nature filed with this court in the wake of the Ohio legislature's enactment of Senate Bill 10, which implements the federal Adam Walsh Child Protection and Safety Act of 2006. The new law went into effect in Ohio on January 1, 2008.

### I. Analysis of Reclassification Status Pursuant to R.C. 2950.031(E)

{¶ 9} Michael Slagle's petition indicates that he filed this action pursuant to R.C. 2950.031(E) and 2950.032(E). However, R.C. 2950.032(E) deals only with the classification of sex offenders serving a prison term as of December 1, 2007. There is no indication that the petitioner in the case at bar was serving a prison term for a sexually oriented offense or child-victim oriented offense on December 1, 2007. Therefore, R.C. 2950.032(E) is inapplicable to the present case.

{¶ 10} R.C. 2950.031(E) applies to the classification of sex offenders who have registered a residence * * * or place of employment address pursuant to section 2950.04, 2950.041, or 2950.05 of the Revised Code prior to December 1, 2007. The petitioner was classified as a sexually oriented offender in 2002, a status that required him to register his residence annually. As a result, R.C. 2950.031(E) is applicable to this petitioner and states:

An offender or delinquent child who is in a category described in division (A)(2) or (B) of this section may request as a matter of right a court hearing to contest the application to the offender or delinquent child of the new registration requirements under Chapter 2950. of the Revised Code as it will exist under the changes that will be implemented on January 1, 2008. The offender

---

2. Notice of New Classification and Registration Duties Tier I Offender (Adult).

or delinquent child may contest the manner in which the letter sent to the offender or delinquent child pursuant to division (A) or (B) of this section specifies that the new registration requirements apply to the offender or delinquent child or may contest whether those new registration requirements apply at all to the offender or delinquent child. To request the hearing, the offender or delinquent child not later than the date that is sixty days after the offender or delinquent child received the registered letter sent by the attorney general pursuant to division (A)(2) of this section shall file a petition with the court specified in this division. If the offender or delinquent child resides in or is temporarily domiciled in this state and requests a hearing, the offender or delinquent child shall file the petition with, and the hearing shall be held in, the court of common pleas or, for a delinquent child, the juvenile court of the county in which the offender or delinquent child resides or temporarily is domiciled.

* * *

If an offender or delinquent child requests a hearing in accordance with this division, at the hearing, all parties are entitled to be heard, and the court shall consider all relevant information and testimony presented relative to the application to the offender or delinquent child of the new registration requirements under Chapter 2950. of the Revised Code as it will exist under the changes that will be implemented on January 1, 2008. If, at the conclusion of the hearing, the court finds that the offender or delinquent child has proven by clear and convincing evidence that the new registration requirements do not apply to the offender or delinquent child in the manner specified in the letter sent to the offender or delinquent child pursuant to division (A) or (B) of this section, the court shall issue an order that specifies the manner in which the court has determined that the new registration requirements do apply to the offender or delinquent child. If at the conclusion of the hearing the court finds that the offender or delinquent child has proven by clear and convincing evidence that the new registration requirements do not apply to the offender or delinquent child, the court shall issue an order that specifies that the new registration requirements do not apply to the offender or delinquent child. The court promptly shall serve a copy of an order issued under this division upon the sheriff with whom the offender or delinquent child most recently registered under section 2950.04, 2950.041, or 2950.05 of the Revised Code and upon the bureau of criminal identification and investigation. The offender or delinquent child and the prosecutor have the right to appeal the decision of the court issued under this division.

{¶ 11} Therefore, pursuant to R.C. 2950.031(E), at the hearing on a petition brought under that provision, the court must determine whether the new

registration requirements were properly applied to the petitioner in the manner specified in the notice sent to that petitioner by the Attorney General.

{¶ 12} In the present case, the notice sent to the petitioner indicates that he is to be classified as a Tier I sex offender under the new law. Pursuant to R.C. 2950.01(E)(1)(b), a Tier I sex offender includes:

A sex offender who is convicted of, pleads guilty to, has been convicted of, or has pleaded guilty to * * *[a] violation of section 2907.04 of the Revised Code when the offender is less than four years older that the other person with whom the offender engaged in sexual conduct, the other person did not consent to the sexual conduct, and the offender previously has not been convicted of or pleaded guilty to a violation of section 2907.02, 2907.03, or 2907.04 of the Revised Code or a violation of former section 2907.12 of the Revised Code.

{¶ 13} At the hearing on this matter, the petitioner did not argue that he had been misclassified under the new law. He did not argue that he did not meet the definition of a Tier I sex offender under R.C. 2950.01(E)(1)(b). As noted above, R.C. 2950.031(E) places the burden on the petitioner to show by clear and convincing evidence that the new registration requirements do not apply to him or her in the manner specified in the notice.

{¶ 14} The petitioner in the case sub judice has failed to demonstrate by clear and convincing evidence that he has been improperly classified as a Tier I sex offender or that the new law does not apply to him. As a result, the court finds that the petitioner's classification as a Tier I sex offender is proper and that his petition contesting classification is not well taken and shall be denied.

## II. Constitutional Challenges

{¶ 15} The petitioner has raised a number of constitutional challenges to the new classification laws. The petitioner did not indicate the procedural posture by which he seeks to challenge the new laws. R.C. 2950.031(E) does not appear to contemplate any legal consideration by the court other than whether the petitioner has been properly classified as a particular tier sex offender under R.C. 2950.01 et seq.

{¶ 16} Hearings on petitions to contest classifications are civil in nature.[3] While Michael Slagle was the defendant in his original criminal case, he is now the plaintiff/petitioner in the present civil action. Therefore, the court finds it difficult to classify these constitutional arguments as "defenses." Instead, the constitutional arguments appear to be a de facto request for declaratory judgment and relief.

---

3. *State v. Wilson,* 113 Ohio St.3d 382, 865 N.E.2d 1264, at ¶ 32.

{¶ 17} However, the legal procedures for challenging the new classification system are not clearly defined, as evidenced by the diverse filings on this issue in common pleas courts throughout Ohio. Therefore, in the interest of thoroughness, the court will address each of the petitioner's constitutional arguments as challenges to the applicability of the new classification scheme.

### (A) Separation of Powers

{¶ 18} The petitioner argues that "retroactive reclassification * * * abrogates final judicial orders adjudicating and classifying the Petitioner under former R.C. Chapter 2950" and that "[t]his violates that separation of powers principle inherent in Ohio's constitutional framework."[4]

{¶ 19} " '[T]he people possessing all governmental power, adopted constitutions, completely distributing it to appropriate departments.' "[5] "They vested the legislative power of the state in the General Assembly (Section 1, Article II, Ohio Constitution), the executive power in the Governor (Section 5, Article III, Ohio Constitution), and the judicial power in the courts (Section 1, Article IV, Ohio Constitution)."[6] "They also specified that '[t]he general assembly shall [not] * * * exercise any judicial power, not herein expressly conferred.' "[7]

{¶ 20} "A statute that violates the doctrine of separation of powers is unconstitutional."[8] " 'The principal of separation of powers is embedded in the constitutional framework of our state government. The Ohio Constitution applies the principle in defining the nature and scope of powers designated to the three branches of the government.' "[9] "It is inherent in our theory of government 'that each of the three grand divisions of the government, must be protected from the encroachments of the others, so far that its integrity and independence may be preserved.' "[10]

---

4. Petition, Memorandum at page 3.

5. *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 462, 715 N.E.2d 1062, quoting *Hale v. State* (1896), 55 Ohio St. 210, 214, 45 N.E. 199.

6. Id.

7. Id., quoting Section 32, Article II, Ohio Constitution.

8. Id. at 475, 715 N.E.2d 1062.

9. Id., quoting *State v. Hochhausler* (1996), 76 Ohio St.3d 455, 463, 668 N.E.2d 457, citing *State v. Warner* (1990), 55 Ohio St.3d 31, 43–44, 564 N.E.2d 18.

10. Id., quoting *Euclid v. Jemison* (1986), 28 Ohio St.3d 157, 159, 28 OBR 250, 503 N.E.2d 136, quoting *Fairview v. Giffee* (1905), 73 Ohio St. 183, 187, 76 N.E. 865.

{¶ 21} In the case at bar, the General Assembly has not abrogated final judicial decisions without amending the underlying applicable law.[11] Instead, the Assembly has enacted a new law, which changes the different sexual offender classifications and time spans for registration requirements, among other things, and is requiring that the new procedures be applied to offenders currently registering under the old law or offenders currently incarcerated for committing a sexually oriented offense. Application of this new law does not order the courts to reopen a final judgment, but instead simply changes the classification scheme. This is not an encroachment on the power of the judicial branch of Ohio's government.

{¶ 22} The court finds no violation of the separation-of-powers principle in the application of the new version of R.C. Chapter 2950.

### (B) Retroactive Laws

{¶ 23} The petitioner next argues that the classification scheme included in the new version of R.C. Chapter 2950, et seq., violates the Ohio Constitution's prohibition against retroactive laws.

{¶ 24} Section 28, Article II of the Ohio Constitution provides that "[t]he general assembly shall have no power to pass retroactive laws."

{¶ 25} "Statutes are presumed to apply only prospectively unless specifically made retroactive." [12]

{¶ 26} Pursuant to the new version of R.C. 2950.01, sex offender classifications under the new law are applicable to a sex offender who "is convicted of, pleads guilty to, has been convicted of, or has pleaded guilty to" certain sexually oriented offenses. Therefore, the legislature has specifically made the new version of Chapter 2950 retroactive as it applies to offenders who have been found guilty of or pleaded guilty to certain offenses prior to the enactment of the new law.

{¶ 27} As a result, Chapter 2950 meets the threshold test for retroactive application pursuant to R.C. 1.48, and consequently, the court must now determine whether it violates Section 28, Article II of the Ohio Constitution.

{¶ 28} " 'Every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective or retroactive.' " [13]

---

11. See, e.g., *United States v. Gardner* (N.D.Cal.2007), 523 F.Supp.2d 1025.

12. *State v. Cook* (1998), 83 Ohio St.3d 404, 410, 700 N.E.2d 570, citing R.C. 1.48.

13. Id., quoting *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 106, 522 N.E.2d 489, quoting *Cincinnati v. Seasongood* (1889), 46 Ohio St. 296, 303, 21 N.E. 630.

■ {¶ 29} "In order to determine whether R.C. Chapter 2950 is unconstitutionally retroactive under *Van Fossen*, [the court] must determine whether R.C. Chapter 2950 is substantive or merely remedial."[14] "A statute is 'substantive' if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligation, or liabilities as to a past transaction, or creates a new right."[15] "Conversely, remedial laws are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right."[16]

■ {¶ 30} "A purely remedial statute does not violate Section 28, Article II of the Ohio Constitution, even if [it is] applied retroactively."[17] The Ohio Supreme Court has "found that it is generally true that laws that relate to procedures are ordinarily remedial in nature."[18]

{¶ 31} In *State v. Cook*, the defendant attempted to challenge the 1997 version of Chapter 2950, which changed the frequency and duration of the previous sex-offender registration requirements.[19] The new version examined by the Ohio Supreme Court in *Cook* increased the frequency of registration requirements to once every 90 days for some offenders and increased the duration of the registration requirements from ten years to life in some cases.[20] Additionally, the number of classifications increased from one (sexually oriented offender) under the old law to three different classifications (sexually oriented offender, habitual sexual offender, and sexual predator) under the 1997 law.[21]

{¶ 32} The Ohio Supreme Court noted in *Cook* that "where no vested right has been created, 'a later enactment will not burden or attach a new disability to a past transaction or consideration in the constitutional sense, unless the past transaction or consideration * * * created at least a reasonable expectation of finality.' "[22] The court has also determined that " '[e]xcept with regard to

---

**14.** Id. at 410–411, 700 N.E.2d 570, citing *Van Fossen* at paragraph three of the syllabus.

**15.** Id. at 411, 700 N.E.2d 570, citing *Van Fossen*, 36 Ohio St.3d at 107, 522 N.E.2d 489.

**16.** Id., citing *Van Fossen*, 36 Ohio St.3d at 107, 522 N.E.2d 489.

**17.** Id., citing *Van Fossen*, 36 Ohio St.3d at 107, 522 N.E.2d 489.

**18.** Id., citing *Van Fossen*, 36 Ohio St.3d at 107–108, 522 N.E.2d 489, citing *Wellston Iron Furnace Co. v. Rinehart* (1923), 108 Ohio St. 117, 140 N.E. 623, paragraph one of the syllabus.

**19.** *Cook*, 83 Ohio St.3d at 411, 700 N.E.2d 570.

**20.** Id.

**21.** Id.

**22.** Id. at 412, 700 N.E.2d 570, quoting *State ex rel. Matz v. Brown* (1988), 37 Ohio St.3d 279, 281, 525 N.E.2d 805.

constitutional protections against ex post facto laws * * * felons have no reasonable right to expect that their conduct will never thereafter be made the subject of legislation.' " [23]

{¶ 33} The court determined in *Cook* that "the registration and address verification provisions of R.C. Chapter 2950 are *de minimis* procedural requirements that are necessary to achieve the goals of R.C. Chapter 2950." [24] The court concurred with the reasoning of the New Jersey Supreme Court, which held as follows:

[I]f the law did not apply to previously-convicted offenders, notification would provide practically no protection now, and relatively little in the near future. The Legislature reached the irresistible conclusion that if community safety was its objective, there was no justification for applying these laws only to those who offend or who are convicted in the future, and not applying them to previously-convicted offenders. Had the Legislature chosen to exempt previously-convicted offenders, the notification provision of the law would have provided absolutely no protection whatsoever on the day it became law, for it would have applied to no one. The Legislature concluded that there was no justification for protecting only children of the future from the risk of reoffense by future offenders, and not today's children from the risk of reoffense by previously-convicted offenders, when the nature of those risks were identical and presently arose almost exclusively from previously-convicted offenders, their numbers now and for a fair number of years obviously vastly exceeding the number of those who, after passage of these laws, will be convicted and released and only then, for the first time, potentially subject to community notification. [25]

{¶ 34} As a result, the court concluded that "the registration and verification provisions are remedial in nature and do not violate the ban on retroactive laws set forth in Section 28, Article II of the Ohio Constitution." [26]

{¶ 35} In *Cook*, the defendant also challenged the applicability of the new classifications under the law, namely habitual sexual offenders and sexual predators, because they imposed new community-notification requirements not contemplated under the old law. [27] The court noted that " '[t]he harsh consequences [of]

---

**23.** Id., citing *Matz*, 37 Ohio St.3d at 281–282, 525 N.E.2d 805.

**24.** Id.

**25.** Id. at 412–413, 700 N.E.2d 570, quoting *Doe v. Poritz* (1995), 142 N.J. 1, 662 A.2d 367.

**26.** Id. at 413, 700 N.E.2d 570.

**27.** Id.

classification and community notification come not as a direct result of the sexual offender law, but instead as a direct societal consequence of [the offender's] past actions.' "[28] Furthermore, the court found that with the new law, "[t]he General Assembly struck a balance between the privacy expectations of the offender and the paramount governmental interest in protecting members of the public from sex offenders."[29]

{¶ 36} The *Cook* court refused to find that "the Retroactivity Clause bans the compilation and dissemination of truthful information that will aid in public safety."[30] Additionally, the court noted that "this dissemination requirement imposes no burden on the defendant; the duty to notify the community applies only to the sheriff with whom the defendant has most recently registered."[31]

{¶ 37} As a result, the court concluded that the "dissemination provisions do not impinge on any reasonable expectation of finality defendant may have had with regard to his conviction * * * and that he, therefore, had no substantive right in this regard."[32] "Consequently, the General Assembly could permissibly impose these additional obligations without infringing on a substantive right," and "the notification provisions of R.C. Chapter 2950 do not violate the prohibition in Section 28, Article II against retroactive laws."[33] The court noted that "[t]o hold otherwise would be 'to find that society is unable to protect itself from sexual predators by adopting the simple remedy of informing the public of their presence.' "[34]

{¶ 38} It should be noted that the Ohio Supreme Court has recently acknowledged the increasingly burdensome nature of Ohio's registration requirements. In *State v. Williams*, Justice Lanzinger noted that "R.C. Chapter 2950 has been amended since *Cook* * * * and the simple registration process and notification procedures considered in that case are now different."[35] The court noted that

---

28. Id., quoting *State v. Lyttle* (Dec. 22, 1997), 12th Dist. No. CA97–03–060, 1997 WL 786216.

29. Id.

30. Id. at 413–414, 700 N.E.2d 570.

31. Id. at 414, 700 N.E.2d 570.

32. Id., citing *Matz*, 37 Ohio St.3d at 281, 525 N.E.2d 805.

33. Id.

34. Id., quoting *Doe v. Poritz*, supra, 142 N.J. at 109, 662 A.2d 367.

35. *State v. Williams*, 114 Ohio St.3d 103, 2007-Ohio-3268, 868 N.E.2d 969, at ¶ 9, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, at ¶ 45 (Lanzinger, J., concurring in part and dissenting in part).

"[w]hile protection of the public is the avowed goal of R.C. Chapter 2950, we cannot deny that additional obligations are now imposed upon those classified as sex offenders." [36]

{¶ 39} However, in *Williams*, the court was dealing only with former R.C. 2950.06, which criminalized an offender's failure to verify his or her current address.[37] The court was careful to note that that particular provision did not "implicate the constitutionality of the registration and notification process as a whole." [38]

{¶ 40} Therefore, as it currently stands, *Cook* is good law and must be followed by this court. As a result, the court finds that the new sex-offender registration requirements as set forth in the newly implemented version of Chapter 2950 are not impermissibly retroactive and do not violation Section 28, Article II of the Ohio Constitution.

## (C) The Ex Post Facto Clause

{¶ 41} The petitioner's next argument is that the new classification requirements increase his sentence and, as a result, violate the ex post facto clause of the United States Constitution.

{¶ 42} "Section 10, Article I of the United States Constitution reads, 'No State shall * * * pass any * * * ex post facto Law.' " [39] " '*Ex post facto*' literally means '[a]fter the fact; by an act or fact occurring after some previous act or fact, and relating thereto * * *.' " [40]

{¶ 43} "An ex post facto law 'punishes as a crime an act previously committed, which was innocent when done, [or] which makes more burdensome the punishment for a crime, after its commission.' " [41]

{¶ 44} "The purpose of the *Ex Post Facto* Clause is to ensure that legislative acts 'give fair warning of their effect and permit individuals to rely on

---

**36.** Id. at ¶ 9.

**37.** Id. at ¶ 10.

**38.** Id.

**39.** *Cook*, 83 Ohio St.3d at 414, 700 N.E.2d 570.

**40.** Id., quoting Black's Law Dictionary (6th Ed.1990) 581.

**41.** *Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, at ¶ 30, quoting *Cook*, 83 Ohio St.3d at 414, 700 N.E.2d 570, quoting *Beazell v. Ohio* (1925), 269 U.S. 167, 169–170, 46 S.Ct. 68, 70 L.Ed. 216.

their meaning until explicitly changed.'"[42] "The clause also prevents the legislature from abusing its authority by enacting arbitrary or vindictive legislation aimed at disfavored groups."[43]

 {¶ 45} "[T]he Ex Post Facto Clause applies only to criminal statutes."[44] *Cook* examined Chapter 2950 under the "intent-effects" test to determine whether it was a civil or criminal statute for purposes of an ex post facto analysis.[45] "In applying the intent-effects test, [a] court must first determine whether the General Assembly, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other' and second, where the General Assembly 'has indicated an intention to establish a civil penalty, * * * whether the statutory scheme was so punitive either in purpose or effect as to negate that intention.'"[46]

{¶ 46} The court found that "the General Assembly's purpose behind R.C. Chapter 2950 is to promote public safety and bolster the public's confidence in Ohio's criminal and mental health systems," and that the "statute is absolutely devoid of any language indicating an intent to punish."[47] The court held that "R.C. Chapter 2950, on its face, clearly is not punitive because it seeks to 'protect the safety and general welfare of the people of this state,' which is a 'paramount governmental interest.'"[48]

{¶ 47} The court reasoned that "registration objectively serves the remedial purpose of protecting the local community" and consequently held that "the General Assembly's intent with regard to R.C. Chapter 2950 is remedial, not punitive."[49]

---

42. *Cook*, 83 Ohio St.3d at 414, 700 N.E.2d 570, quoting *Weaver v. Graham* (1981), 450 U.S. 24, 28–29, 101 S.Ct. 960, 67 L.Ed.2d 17.

43. Id. at 414–415, 700 N.E.2d 570, citing *Miller v. Florida* (1987), 482 U.S. 423, 429, 107 S.Ct. 2446, 96 L.Ed.2d 351.

44. Id. at 415, 700 N.E.2d 570, citing *California Dept. of Corr. v. Morales* (1995), 514 U.S. 499, 504, 115 S.Ct. 1597, 131 L.Ed.2d 588.

45. Id.

46. Id., quoting *United States v. Ward* (1980), 448 U.S. 242, 248–249, 100 S.Ct. 2636, 65 L.Ed.2d 742.

47. Id. at 417, 700 N.E.2d 570.

48. Id., quoting former R.C. 2950.02(B) and (A)(2).

49. Id.

{¶ 48} Furthermore, *Cook* determined that Chapter 2950 did not have the effective of a punitive law, under the factors outlined in *Kennedy v. Mendoza–Martinez* (1963), 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644.[50] The court determined that Chapter 2950 imposed no new affirmative disability or restraint and no requirement of scienter and did not promote the traditional aims of punishment-retribution and deterrence.[51] Additionally, the court found historical support in the law for the registration and notification provisions and noted that "the behavior to which R.C. Chapter 2950 applies is already a crime."[52]

{¶ 49} The court found that "R.C. Chapter 2950 serves the solely remedial purpose of protecting the public," and while "the notification requirements may be a detriment to registrants * * * the sting of public censure does not convert a remedial statute into a punitive one."[53]

{¶ 50} As discussed above, the reasoning in *Cook* is applicable to the new version of R.C. Chapter 2950 and is still good law in this state. As a result, the court finds that the new registration and notification requirements do not violate the Ex Post Facto Clause of the United States Constitution.

(D) The Double Jeopardy Clauses

{¶ 51} The petitioner also argues that the new classification and registration requirements violate the Double Jeopardy clauses of the United States and Ohio Constitutions.

{¶ 52} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, prohibits an accused from being "tried twice for the same offense." Section 10, Article I of the Ohio Constitution provides that "[n]o person shall be twice put in jeopardy for the same offense."

{¶ 53} In *State v. Wilson*, 113 Ohio St.3d 382, 865 N.E.2d 1264, the court discussed its prior decision in *State v. Williams* (2000), 88 Ohio St.3d 513, 527, 728 N.E.2d 342.[54] In *Williams*, "the defendants alleged that R.C. Chapter 2950 violated the Double Jeopardy Clause because it inflicted a second punishment for a single offense."[55] Relying on its reasoning in *Cook*, the court "reaffirmed that

**50.** Id. at 423, 700 N.E.2d 570.

**51.** Id. at 418–420, 700 N.E.2d 570.

**52.** Id. at 419, 421, 700 N.E.2d 570.

**53.** Id. at 423, 700 N.E.2d 570.

**54.** *Wilson*, 113 Ohio St.3d 382, 865 N.E.2d 1264, at ¶ 31.

**55.** Id.

R.C. Chapter 2950 is 'neither "criminal," nor a statute that inflicts punishment' and held that there was no violation of the Double Jeopardy Clause." [56]

{¶ 54} Based on the Ohio Supreme Court's analysis of this issue in *Williams* and *Wilson,* the court finds that the new classification and registration requirements do not violate the Double Jeopardy clauses of the United States and Ohio Constitutions.

## (E) Breach of Contract

{¶ 55} The petitioner's final argument is that the new registration requirements constitute a breach of his plea agreement with the state of Ohio.

{¶ 56} "A plea agreement is generally 'contractual in nature and subject to contract-law standards.'" [57] "It is well established that a plea agreement is viewed as a contract between the State and a criminal defendant." [58]

{¶ 57} "Accordingly, if one side breaches the agreement, the other side is entitled to either rescission or specific performance of the plea agreement." [59] "The elements of a breach of contract claim are the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." [60]

 {¶ 58} First, the court will note that the record before it contains no indication of whether the petitioner was found guilty of unlawful sexual conduct with a minor by a trier of fact or pleaded guilty, and, if he did plead guilty, whether this was pursuant to any plea agreement. Therefore, the petitioner has failed to establish the existence of a contract between himself and the state. Additionally, the petitioner has failed to establish the details of any contract, and therefore, this court is prevented from determining whether the state breached any part of a plea agreement.

 {¶ 59} Even if, for the sake of this discussion, the court assumes the petitioner pleaded guilty to the charge and, in doing so, entered into a plea agreement with the sate, there has been no breach of agreement. "Once [the

---

**56.** Id., quoting *Williams,* 88 Ohio St.3d at 528, 728 N.E.2d 342.

**57.** *State v. Ferreira* (Nov. 17, 2006), 6th Dist. No. L–06–1136, 2006-Ohio-6060, 2006 WL 3334540, at ¶ 13, citing *State v. Butts* (1996), 112 Ohio App.3d 683, 686, 679 N.E.2d 1170.

**58.** *State v. Walker* (June 9, 2006), 6th Dist. No. L–05–1207, 2006-Ohio-2929, 2006 WL 1580051, at ¶ 13, citing *Santobello v. New York* (1971), 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427.

**59.** Id., citing *Santobello,* 404 U.S. at 262, 92 S.Ct. 495, 30 L.Ed.2d 427.

**60.** *Ferreira* at ¶ 13, citing *Doner v. Snapp* (1994), 98 Ohio App.3d 597, 600, 649 N.E.2d 42.

petitioner] pled guilty [to the offense charged] and the trial court sentenced him, both [the petitioner] and the State had performed their respective parts of the plea agreement." [61] "Consequently, no action by the State after this date could have breached the plea agreement." [62]

{¶ 60} There is no evidence that the state made any promises to the petitioner pursuant to any plea agreement that his registration duties as a sex offender would be for a particular period of time or be of a particular frequency. Clearly, the prosecution, as a member of the executive branch, could not enter into any agreement that would abrogate the right of the Ohio legislature to revise the classification scheme. Furthermore, any plea agreement between the state and the petitioner has already been performed by each party.

{¶ 61} Therefore, the court finds that there has been no breach of any plea agreement between the petitioner and the state by virtue of the new classification and registration requirements.

### III. Conclusion

{¶ 62} The court makes the following findings:

(1) The petitioner has failed to prove by clear and convincing evidence that the new registration requirements do not apply to him as set forth in the notice provided to him by the Ohio Attorney General's Office. Therefore, the petitioner is not entitled to any relief under R.C. 2950.031(E);

(2) The new classification and registration requirements do not violate the separation-of-powers principle inherent in the Ohio Constitution;

(3) The new classification and registration requirements are not impermissibly retroactive and do not violate Section 28, Article II of the Ohio Constitution;

(4) The new classification and registration laws are remedial in nature pursuant to the analysis in *Cook* and do not violate the Ex Post Facto Clause of the Untied States Constitution;

(5) The new classification and registration requirements do not violate the Double Jeopardy clauses of the United States and Ohio Constitutions; and

(6) The petitioner has failed to demonstrate any breach of a plea agreement contract between himself and the State.

---

**61.** *State v. Pointer* (July 14, 2005), 8th Dist. No. 85195, 2005-Ohio-3587, 2005 WL 1653589, at ¶ 9, citing *State v. McMinn* (June 16, 1999), 9th Dist. No. 2927–M, 1999 WL 394811.

**62.** Id.

{¶ 63} As a result, the court finds that the petitioner's petition to contest reclassification is not well taken and shall be denied in its entirety.

So ordered.