DECISION AND JUDGMENT ENTRY
{¶ 1} Larry Randlett appeals the Ross County Common Pleas Court's order overruling his constitutional challenge to his reclassification as a Tier III Sex Offender under R.C. 2950, as amended by Senate Bill 10. On appeal, Randlett contends that S.B. 10 violates the Ex Post Facto Clause of the United States Constitution and the prohibition against retroactive laws contained in the Ohio Constitution. Because R.C. Chapter 2950 remains civil in nature, and not punitive, we disagree. Next, Randlett contends that S.B. 10 violates the separation of powers. Because S.B. 10 does not impose on the power of the judiciary, we disagree. Randlett next contends that his reclassification constitutes multiple punishments in violation of the Double Jeopardy Clause of the United States and Ohio Constitutions. Because S.B. 10 is civil in nature, *Page 2 
we disagree. Randlett next contends that the residency restrictions contained in S.B. 10 violate his right to Due Process of law. Because Randlett has no standing to challenge the constitutionality of the residency restriction, we do not address his argument. Finally, Randlett contends that S.B. 10 impairs a contract between himself and the state of Ohio. Because S.B. 10 does not impair any vested rights of Randlett, we disagree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} In 2003, Randlett entered guilty pleas in the Franklin County Court of Common Pleas to two counts of sexual battery, third degree felonies, multiple counts of gross sexual imposition, third and fourth degree felonies, multiple counts of corruption of a minor, third and fourth degree felonies, and disseminating matter harmful to juveniles. The court sentenced Randlett accordingly and classified him as a sexual predator.
 {¶ 3} On November 11, 2007, the Ohio Bureau of Criminal Identification and Investigation sent a NOTICE OF NEW CLASSIFICATION AND REGISTRATION DUTIES ("notice") to Randlett at the Ross Correctional Institution. The notice stated that pursuant to the Ohio Legislature's passage of S.B. 10, Randlett would be newly classified as a Tier III Sex Offender beginning January 1, 2008. On February 4, 2008, Randlett filed a petition to contest the application of S.B. 10 to him, pursuant to R.C. 2950.031(E). Randlett argued that: (1) the retroactive application of S.B. 10 violated the Ex Post Facto Clause of the United States Constitution; (2) the retroactive application of S.B. 10 violated the prohibition against retroactive laws; (3) his reclassification under S.B. 10 violated the doctrine of separation of powers; (4) his reclassification was an *Page 3 
impermissible multiple punishment under the double jeopardy clause; (5) the residency restrictions under S.B. 10 violate due process; and (6) S.B. 10 impinges on his right to contract.
 {¶ 4} On May 23, 2008, the trial court held a hearing on Randlett's petition. Neither Randlett nor the state presented any evidence during the hearing. On June 3, 2008, the court denied the petition and found that application of S.B. 10 to Randlett was constitutional. Randlett now appeals asserting the following assignment of error: "THE TRIAL COURT ERRED IN FINDING THAT THE AMENDED SECTIONS OF O.R.C. § 2950 (AKA ADAM WALSH ACT) WERE CONSTITUTIONAL AND COULD BE APPLIED TO DEFENDANT. SAID STATUTE VIOLATE[S] DEFENDANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS."
 II. {¶ 5} While Randlett presents a single assignment of error, he presents six separate constitutional challenges to S.B. 10. First, Randlett argues that S.B. 10's retroactive application is an unconstitutional ex post facto law in violation of Article I, Section 10
of the United States Constitution. Second, Randlett contends that S.B. 10's retroactive application violates Article II, Section 28 of the Ohio Constitution's prohibition against retroactive laws. Third, Randlett asserts that his reclassification under S.B. 10 violates the doctrine of separation of powers. Fourth, Randlett argues that his reclassification under S.B. 10 is an impermissible multiple punishment and a violation of the double jeopardy clauses of the United States and Ohio Constitutions. Fifth, Randlett contends that the residency restrictions contained in S.B. 10 violate his right to due *Page 4 
process. Finally, Randlett asserts that S.B. 10 impairs his alleged contract with the state of Ohio, in violation of Article II, Section 28
of the Ohio Constitution.
 {¶ 6} Randlett does not dispute the facts as applied to these constitutional provisions and S.B. 10. Instead, his arguments involve the interpretation of these constitutional provisions as they relate to S.B. 10. Hence, his arguments are all legal questions that we review de novo. See, e.g., State v. Downing, Franklin App. No. 08AP-48,2008-Ohio-4463, ¶ 6, citing Stuller v. Price, Franklin App. No. 03AP-30,2003-Ohio-6826, ¶ 14; State v. Green, Lawrence App. No. 07CA33,2008-Ohio-2284, ¶ 7.
 {¶ 7} Statutes enacted in Ohio are "presumed to be constitutional."State v. Ferguson, 120 Ohio St.3d 7, 2008-Ohio-4824, ¶ 12, citingState ex rel. Jackman v. Cuyahoga Cty. Court of Common Pleas (1967), 9 Ohio St.2d 159. This presumption remains until one challenging a statute's constitutionality shows, "beyond reasonable doubt, that the statute is unconstitutional." Id., citing Roosevelt Properties Co. v.Kinney (1984), 12 Ohio St.3d 7.
 A. {¶ 8} We will address Randlett's first two constitutional challenges together. Randlett contends that S.B. 10's retroactive application is an unconstitutional ex post facto law in violation of Article I, Section 10
of the United States Constitution and violates the Ohio Constitution's prohibition on retroactive laws.
 {¶ 9} "The general assembly shall have no power to pass retroactive laws * * *." Section 28, Article I of the Ohio Constitution. Retroactive statutes are "unconstitutional if it retroactively impairs vested substantive rights, but not if it is merely remedial in *Page 5 
nature." Hyle v. Porter, 117 Ohio St.3d 165, 2008-Ohio-542, ¶ 7, citingState v. Consilio, 114 Ohio St.3d 295, 2007-Ohio-4163. As noted by the Supreme Court of Ohio, "Ohio retroactivity analysis does not prohibit all increased burdens; it prohibits only increased punishment."Ferguson at ¶ 39.
 {¶ 10} In determining whether a statute is unconstitutionally retroactive, courts must "first determine whether the General Assembly expressly made the statute retrospective[,]" and if so, courts must then determine "whether the statute restricts a substantive right or is remedial." Id. at ¶ 13. (Citations omitted.) In considering the first prong, we note that "[s]tatutes are presumed to apply only prospectively unless the General Assembly specifically indicates that a statute applies retrospectively." Id. at ¶ 15, citing R.C. 1.48; Doe v.Archdiocese of Cincinnati, 109 Ohio St.3d 491, 2006-Ohio-2625, ¶ 40. Typically, a statute must clearly state that it applies retroactively. Id.
 {¶ 11} Here, the legislature intended to apply the tier classification set forth in S.B. 10 retroactively. State v. Graves, Ross App. No. 07CA3004, 2008-Ohio-5763, ¶¶ 9-10; see, also, State v. Byers, Columbiana App. No. 07CA39, 2008-Ohio-5051, ¶¶ 59-63 (concluding that "Senate Bill 10's tier classification system was intended to apply retroactively to all offenders[,]" but such conclusion "is not a determination that all of Senate Bill 10 applies retroactively, rather, it is only an opinion that the tier classification system is intended to apply retroactively"). As a result, we move to the second prong of the analysis.
 {¶ 12} Next, we must determine if S.B. 10 "impairs vested substantive rights" or whether it is "merely remedial in nature[.]"Ferguson at ¶ 27. The Supreme Court of *Page 6 
Ohio has consistently held "that R.C. Chapter 2950 is a remedial statute." Id. at ¶ 29. Randlett maintains that S.B. 10 "imposes burdens on defendants that are historically regarded as punishment and which operate as affirmative disabilities or restraints." Specifically, Randlett contends that, aside from embarrassment and ostracism imposed by S.B. 10, the newly enacted statute also limits where offenders can live, akin to "colonial punishments of `public shaming, humiliation, and banishment.'"
 {¶ 13} In Ferguson, the dissenting opinion recognized the concern regarding the limitations on where sex offenders can reside and viewed S.B. 5's prohibition against sex offenders "residing within 1,000 feet of any school" as one of the number of newly amended portions of R.C. Chapter 2950 that transformed previous versions of the Chapter from remedial to punitive. Ferguson at ¶¶ 45-47 (Lanzinger, J., dissenting). While the dissenting opinion is persuasive, and despite the fact that the Supreme Court of Ohio has recently "been more divided in [their] conclusions about whether the statute has evolved from a remedial one into a punitive one, State v. Wilson, 113 Ohio St.3d 383,2007-Ohio-2202, a majority of the [Ohio Supreme Court] ultimately held that the statute remained civil in nature * * *." Id. at ¶ 30.
 {¶ 14} Based upon the reasoning in Ferguson concluding that R.C. Chapter 2950, as amended by S.B. 5, remains civil in nature, and not punitive in nature, we conclude that the S.B. 10 version of R.C. Chapter 2905 also remains civil in nature. This court has already reached such a conclusion. See Graves at ¶ 13; State v. Longpre, Ross App. No. 08CA3017, 2008-Ohio-3832, ¶ 15. We find no reason to reassess our determinations in Graves or Longpre at this time. Consequently, we find that Randlett *Page 7 
has not shown beyond a reasonable doubt that S.B. 10 is unconstitutional. Ferguson, supra, at ¶ 12, citing Roosevelt PropertiesCo., supra.
 {¶ 15} Accordingly, we overrule Randlett's first two constitutional challenges.
 B. {¶ 16} Next, Randlett contends that reclassification as a Tier III sex offender under S.B. 10 violates the separation of powers doctrine. Specifically, Randlett argues that "[t]he legislative and executive branches' attempt to reclassify Appellant under Ohio's Adam Walsh Act violates the Separation of Powers Doctrine by interfering with a prior judicial adjudication regarding Appellant's sex offender status."
 {¶ 17} Initially, it must be noted that a statute violating "the doctrine of separation of powers is unconstitutional." State ex rel.Ohio Academy of Trial Lawyers v. Sheward, 86 Ohio St.3d 451, 475,1999-Ohio-123. "The separation-of-powers doctrine implicitly arises from our tripartite democratic form of government and recognizes that the executive, legislative, and judicial branches of our government have their own unique powers and duties that are separate and apart from the others." State v. Thompson, 92 Ohio St.3d 584, 586, 2001-Ohio-1288, citing Zanesville v. Zanesville Tel. Telegraph Co. (1900),63 Ohio St. 442. The doctrine's purpose "is to create a system of checks and balances so that each branch maintains its integrity and independence." Id., citing State v. Hochhausler (1996), 76 Ohio St.3d 455; S. Euclid v.Jemison (1986), 28 Ohio St.3d 157.
 {¶ 18} Pursuant to the Ohio Constitution, "the General Assembly is vested with the power to make laws." Id., citing Section 1, Article II, Ohio Constitution. The Ohio *Page 8 
General Assembly is prohibited "from exercising `any judicial power, not herein expressly conferred.'" Id., citing Section 32, Article II, Ohio Constitution. Courts, on the other hand, "possess all powers necessary to secure and safeguard the free and untrammeled exercise of their judicial functions and cannot be directed, controlled or impeded therein by other branches of the government." Id. (Citations omitted.)
 {¶ 19} Here, Randlett essentially contends that S.B. 10 legislatively requires the Attorney General, an executive official, to vacate an existing court judgment regarding his sex offender classification that was judicially determined in his underlying case. Ohio courts have rejected such a contention and conclude that S.B. 10 does not violate the doctrine of separation of powers by abrogating final court judgments. In re Smith, Allen App. No. 1-07-58, 2008-Ohio-3234;Byers, supra; Slagle v. State, 145 Ohio Misc.2d 98, 2008-Ohio-593. One Ohio court noted, "[t]he classification of sex offenders into categories has always been a legislative mandate, not an inherent power of the courts" and "[w]ithout the legislature's creation of sex offender classifications, no such classification would be warranted." In reSmith at ¶ 39, citing Slagle. Thus, sex offender classification is nothing more "than a creation of the legislature, and therefore, the power to classify is properly expanded or limited by the legislature." Id.
 {¶ 20} Another Ohio court similarly determined that S.B. 10 "is not an encroachment on the power of the judicial branch of Ohio's government."Slagle at ¶ 21. In Slagle, the court concluded that S.B. 10 does not abrogate "final judicial decisions without amending the underlying applicable law" or "order the courts to reopen a final judgment." Id. Instead, S.B. 10 "changes the different sexual offender classifications *Page 9 
and time spans for registration requirements, among other things, and [requires] that the new procedures be applied to offenders currently registering under the old law or offenders currently incarcerated for committing a sexually oriented offense." Id.
 {¶ 21} Here, we agree with the foregoing conclusions finding that S.B. 10 does not abrogate final judicial determinations. We further add that Randlett's sex offender classification is nothing more than a collateral consequence arising from his criminal conduct. See Ferguson at ¶ 34. Further, following his sex offense convictions, Randlett "had no reasonable right to expect that [his] conduct [would] never thereafter be made the subject of legislation." State v. Cook (1998),83 Ohio St.3d 404, 412, citing State ex rel. Matz v. Brown (1988), 37 Ohio St.3d 279,281-282; see, also, State v. King, Miami App. No. 08-CA02,2008-Ohio-2594, ¶ 33 (finding that convicted sex offenders "have no reasonable expectation that [their] criminal conduct would not be subject to future versions of R.C. Chapter 2950"). Based on the Supreme Court of Ohio's decision in Cook, Ohio courts conclude that "convicted sex offenders have no reasonable `settled expectations' or vested rights concerning the registration obligations imposed on them." King at ¶ 33.
 {¶ 22} Because Randlett has no reasonable expectation that his sex offenses would never be subject to future sex offender legislation, it cannot be said that S.B. 10 abrogates a final judicial determination in violation of the doctrine of separation of powers. Consequently, we find that Randlett has not shown beyond a reasonable doubt that S.B. 10 is unconstitutional. Ferguson at ¶ 12.
 {¶ 23} Accordingly, we overrule Randlett's constitutional challenge in this regard. *Page 10 
 C. {¶ 24} In his fourth challenge to the constitutionality of S.B. 10, Randlett contends that his reclassification as a Tier III sex offender constitutes multiple punishment in violation of the double jeopardy clauses of the United States and Ohio Constitutions.
 {¶ 25} "The Double Jeopardy Clause states that no person shall `be subject for the same offence to be twice put in jeopardy of life or limb.'" State v. Williams, 88 Ohio St.3d 513, 527-528, 2000-Ohio-428, citing the Fifth Amendment to the United States Constitution; see, also, Section 10, Article I, Ohio Constitution. The double jeopardy clauses prevent states "from punishing twice, or from attempting a second time to criminally punish for the same offense." Id. at 528, citingKansas v. Hendricks, 521 U.S. 346; Witte v. United States (1995),515 U.S. 389. As a result, "[t]he threshold question in a double jeopardy analysis, therefore, is whether the government's conduct involves criminal punishment." Id., citing Hudson v. United States (1997),522 U.S. 93.
 {¶ 26} As set forth in our analysis above, R.C. Chapter 2950 remains civil in nature, and not punitive, following the enactment of S.B. 10. Thus, we find Randlett's contention in this regard meritless. SeeFerguson, supra; Williams, supra. Consequently, we find that Randlett has not shown beyond a reasonable doubt that S.B. 10 is unconstitutional. Ferguson at ¶ 12.
 {¶ 27} Accordingly, we overrule Randlett's fourth constitutional challenge.
 D. {¶ 28} In his fifth constitutional challenge to S.B. 10, Randlett contends that the residency restrictions set forth in S.B. 10 violate his right to due process. Randlett *Page 11 
claims that such restrictions "operate as a direct restraint on [his] liberty and infringe [upon] his fundamental right to live where he wishes, as well as, his right to privacy."
 {¶ 29} Here, Randlett is currently incarcerated. As a result, he must establish that his contention is ripe for review. However, he fails to do so.
 {¶ 30} Pursuant to R.C. 2950.034(A), as amended by S.B. 10, "[n]o person who has been convicted of, is convicted of, has pleaded guilty to, or pleads guilty to a sexually oriented offense or a child-victim oriented offense shall establish a residence or occupy residential premises within one thousand feet of any school premises or preschool or child day-care center premises." This statutory section was at issue inHyle, wherein the Supreme Court of Ohio held that such statute "was not expressly made retrospective," and thus, "does not apply to an offender who bought his home and committed his offense before the effective date of the statute." Hyle at syllabus. Here, however, there is no evidence that Randlett owns a home at all, or if he does, whether it falls within 1,000 feet of a school, preschool or day-care center. Instead, the only information known by this court regarding Randlett's current residence is that he is incarcerated by the state of Ohio.
 {¶ 31} The Eighth Appellate district has held that, where the offender does not presently claim to reside "within 1,000 feet of a school, or that he was forced to move from an area because of his proximity to a school[,]" the offender "lacks standing to challenge the constitutionality" of the residency restrictions. State v. Peak, Cuyahoga App. No. 90255, 2008-Ohio-3448, ¶¶ 8-9; see, also, State v.Pierce, Cuyahoga App. No. 88470, 2007-Ohio-3665, ¶ 33; State v.Amos, Cuyahoga App. No. 89855, 2008-Ohio-1834. *Page 12 
The United States District for the Southern District of Ohio has concluded the same. Coston v. Petro (S.D. Ohio 2005), 398 F.Supp.2d 878,882-883. "The constitutionality of a state statute may not be brought into question by one who is not within the class against whom the operation of the statute is alleged to have been unconstitutionally applied and who has not been injured by its alleged unconstitutional provision.'" Pierce at ¶ 33, citing State v. Brown, Cuyahoga App. No. 86577, 2006-Ohio-4584, quoting Palazzi v. Estate of Gardner (1987),32 Ohio St.3d 169, syllabus.
 {¶ 32} The Eighth Appellate District has also held that where an offender "is currently in prison," that offender is not presently subject to the residency restrictions, resulting in no present harm being inflicted on the offender. State v. Freer, Cuyahoga App. No. 89392, 2008-Ohio-1257, ¶¶ 29-30. As a result, the court dismissed a due process challenge to the residency restrictions on the grounds that such issue was not ripe for review. Id. at ¶ 30.
 {¶ 33} For the above reasons, we agree that Randlett has failed to show standing to challenge the constitutionality of the residency restriction contained in R.C. 2950.034. Consequently, we find that Randlett has not shown beyond a reasonable doubt that S.B. 10 is unconstitutional. Ferguson at ¶ 12.
 {¶ 34} Accordingly, we overrule Randlett's fifth constitutional challenge to S.B. 10.
 E. {¶ 35} In his sixth and final constitutional challenge, Randlett contends that S.B. 10 impairs a contract between himself and the state of Ohio established at the time of his conviction. Unfortunately, however, Randlett has not provided this court with the *Page 13 
contract, i.e., a plea agreement. Instead, Randlett's argument is essentially that, at the time of his conviction and original classification, he had an expectation of what would be required of him under that sex offender classification scheme. Based on such expectation, Randlett now maintains that his efforts to rehabilitate himself while incarcerated are now for naught since he is required under S.B. 10 to register for life.
 {¶ 36} Article II, Section 28 of the Ohio Constitution provides that "[t]he general assembly shall have no power to pass * * * laws impairing the obligation of contracts * * *." Ohio courts have rejected similar arguments as that set forth by Randlett, notably In re Gant, Allen App. No. 1-08-11, 2008-Ohio-5198, ¶¶ 22-24; State v. Desbiens, Montgomery App. No. 22489, 2008-Ohio-3375, ¶¶ 31; see, also, State v. Taylor, Geauga App. No. 2002-G-2442, 2003-Ohio-6963, ¶ 28; State v. Paris, Auglaize App. No. 2-2000-04, 2000-Ohio-1886; State v. Harley (May 16, 2000), Franklin App. No. 99AP-374.
 {¶ 37} In State v. Cook (1998), 83 Ohio St.3d 404, the Supreme Court of Ohio noted that "where no vested right has been created, `a later enactment will not burden or attach a new disability to a past transaction or consideration in the constitutional sense, unless the past transaction or consideration * * * created at least a reasonable expectation of finality.'" Cook at 412, citing State ex rel. Matz v.Brown (1988), 37 Ohio St.3d 279. Here, Randlett acknowledges that he had no vested right in the removal of his sexual predator classification. As a result, S.B. 10 does not interfere with any vested contractual right, even assuming such a contract existed. Consequently, we find that Randlett has not shown beyond a reasonable doubt that S.B. 10 is unconstitutional. Ferguson at ¶ 12. *Page 14 
 {¶ 38} Accordingly, we overrule Randlett's sixth constitutional challenge.
 III. {¶ 39} Having overruled all of Randlett's constitutional challenges, we overrule his sole assignment of error and affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 15 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellant shall pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty-day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
 Harsha, J. and Abele, J.: Concur in Judgment and Opinion. *Page 1