OPINION
{¶ 1} Defendant-appellant, George Williams, appeals the decision of the Warren County Court of Common Pleas classifying him as a Tier II Sex Offender/Child Victim Offender Registrant ("Tier II Sex Offender") under Senate Bill 10, a law which was in effect on the date the trial court classified and sentenced appellant but which was not in effect on the date he committed the sexual offense. This appeal challenges the constitutionality of Senate Bill 10. *Page 2 
 {¶ 2} Appellant was indicted in 2007 on one count of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), a fourth-degree felony. According to the state, during the month of May 2007, then 19-year-old appellant engaged in sexual conduct with a 14-year-old girl. On December 14, 2007, appellant pled guilty as charged. He subsequently moved to be sentenced under former R.C. Chapter 2950, the sex offender registration statute that was in effect at the time of his offense. The trial court denied the motion, and on February 1, 2008, sentenced appellant to three years of community control and classified him as a Tier II Sex Offender under Senate Bill 10.
 {¶ 3} Appellant appeals, raising one assignment of error:
 {¶ 4} "THE RETROACTIVE APPLICATION OF SENATE BILL 10 VIOLATES THE EX POST FACTO, DUE PROCESS, AND DOUBLE JEOPARDY CLAUSES OF THE UNITED STATES CONSTITUTION AND THE RETROACTIVITY CLAUSE OF ARTICLE II, SECTION 28 OF THE OHIO CONSTITUTION; FIFTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; ARTICLE I, SECTION 10 OF THE UNITED STATES CONSTITUTION; AND ARTICLE I, SECTION 10 AND ARTICLE II, SECTION 28 OF THE OHIO CONSTITUTION."
 {¶ 5} In his assignment of error, appellant argues that Senate Bill 10 violates several constitutional rights. Specifically, appellant asserts that the application of Senate Bill 10 (1) violates the Ex Post Facto Clause of the United States Constitution; (2) violates the Ohio Constitution's prohibition on retroactive laws; (3) violates the doctrine of separation of powers; (4) violates the prohibition against cruel and unusual punishment; (5) violates his due process rights; and (6) amounts to double jeopardy.
 {¶ 6} At this juncture, we note that on the record before us, appellant never raised his constitutional arguments in the trial court. It is well-established that "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which is *Page 3 
apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." State v. Awan (1986),22 Ohio St.3d 120, syllabus. However, the "waiver doctrine announced in Awan is discretionary." In re M.D. (1988), 38 Ohio St.3d 149, 151.
 {¶ 7} Thus, we have discretion to address appellant's constitutional arguments under a plain-error analysis. Id.; State v. Desbiens, Montgomery App. No. 22489, 2008-Ohio-3375, ¶ 17. An error qualifies as plain error only if it is obvious and but for the error, the outcome of the proceeding clearly would have been otherwise. Desbiens at ¶ 17. Although appellant failed to raise his constitutional arguments below, we choose to exercise our discretion and address his claims on appeal.
 {¶ 8} Before we address appellant's constitutional arguments, we first proceed with a brief overview of Ohio's sex offender registration legislation before Senate Bill 10.
 {¶ 9} Ohio first enacted a sex offender registration statute in 1963. As it is now, the statute was contained within R.C. Chapter 2950. The law, however, became more complex in 1996 due in large part to New Jersey's 1994 passage of "Megan's Law" and the 1994 enactment of the federal Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act (Section 14071, Title 42, U.S. Code). SeeState v. Williams, 88 Ohio St.3d 513, 516-517, 2000-Ohio-428. In 1996, against this backdrop, the Ohio Legislature repealed and reenacted R.C. Chapter 2950's sex offender registration statute ("former R.C. Chapter 2950"). In repealing and reenacting former R.C. Chapter 2950, the legislature stated its intent to "protect the safety and general welfare of the people of this state." As a result, the three sets of provisions within former R.C. Chapter 2950, to wit: the sex offender classification, registration, and community notification provisions, became more stringent.
 {¶ 10} Under former R.C. Chapter 2950, a sentencing court was required to determine *Page 4 
whether sex offenders fell into one of the following classifications: (1) sexually-oriented offender; (2) habitual sex offender; or (3) sexual predator. When determining whether a sex offender was a sexual predator, including for offenders in prison for sex offenses committed before July 1, 1997 (the effective date of the statute), the sentencing court was to hold a hearing and consider several factors to determine the individual's likelihood to engage in future sex offenses. The registration provisions applied to all three classifications of sex offenders, and applied to offenders sentenced on or after July 1, 1997 regardless of when the offense occurred. The registration provisions also applied to habitual sex offenders required to register immediately prior to the effective date. Finally, the community notification provisions applied to all sexual predators and to the habitual sex offenders upon whom the sentencing court had imposed the notification requirements.[1]
 {¶ 11} In State v. Cook, 83 Ohio St.3d 404, 1998-Ohio-291, the Ohio Supreme Court addressed whether former R.C. Chapter 2950, as applied to conduct prior to the effective date of the statute, violated the Ohio Constitution's prohibition on retroactive laws and the Ex Post Facto Clause of the United States Constitution. The supreme court noted that former R.C. Chapter 2950 sought to "protect the safety and general welfare of the people of this state," which was a "paramount governmental interest." Id. at 417. The supreme court held that because the statute was remedial rather than punitive, the registration provisions of former R.C. Chapter 2950 did not violate the Ohio Constitution's ban on retroactive laws. Id. at 413. The supreme court further held that in light of the statute's remedial nature, and because there was no clear proof that the statute was punitive in its effect, the registration and notification provisions of former R.C. Chapter 2950
did not violate the Ex Post Facto Clause of the United States Constitution. Id. at 423. *Page 5 
 {¶ 12} Two years later, in Williams, 88 Ohio St.3d 513, the supreme court addressed whether the registration and notification provisions of former R.C. Chapter 2950 amounted to double jeopardy. The supreme court held that because former R.C. Chapter 2950 was "neither `criminal,' nor a statute that inflicts punishment," former R.C. Chapter 2950 did not violate the Double Jeopardy Clauses of the United States and Ohio Constitutions. Id. at 528. Subsequently, in State v. Wilson,113 Ohio St.3d 382, 2007-Ohio-2202, the supreme court reiterated that "the sex-offender-classification proceedings under [former] R.C. Chapter 2950
are civil in nature[.]" Id. at ¶ 32.
 {¶ 13} Former Chapter 2950 was amended by Senate Bill 5, effective July 31, 2003. The amendments required that the designation "predator" and the concomitant duty to register remain for life; required sex offenders to register in three different counties (that is, county of residence, county of employment, and county of school) every 90 days (as opposed to registering only in their county of residence); and expanded the community notification requirements. In State v. Ferguson, Slip Opinion No. 2008-Ohio-4824, the Ohio Supreme Court addressed whether the Senate Bill 5 amendments, as applied to conduct prior to the effective date of the statute, violated the Ex Post Facto Clause of the United States Constitution and the Ohio Constitution's prohibition on retroactive laws. Once again, noting the civil, remedial nature of the statute, the supreme court held that the Senate Bill 5 amendments to former R.C. Chapter 2950 neither violated the retroactivity clause of the Ohio Constitution nor the Ex Post Facto Clause of the United States Constitution. Id. at ¶ 36, 40, and 43.
 {¶ 14} On June 30, 2007, the Governor of the state of Ohio signed Senate Bill 10 into effect. Senate Bill 10 implements the federal Adam Walsh Child Protection and Safety Act which was passed by the United States Congress in 2006. Senate Bill 10 amended numerous sections of Ohio's Revised Code. However, for purposes of this appeal, only the *Page 6 
revisions to former Chapter 2950 are relevant. Thus, when Senate Bill 10 is discussed in the case at bar, it is only pertaining to the revisions to former R.C. Chapter 2950, and not to the revisions of any other chapter of the Revised Code. See State v. Byers, Columbiana App. No. 07 CO 39, 2008-Ohio-5051. Senate Bill 10 went into effect on January 1, 2008.
 {¶ 15} Senate Bill 10 classifies each sex offender subject to registration under a new three-tiered system, thereby abolishing the prior classifications in former R.C. Chapter 2950. Designations such as "sexual predator" no longer exist, nor do the related hearings under former R.C. 2950.09.
 {¶ 16} Now, under Senate Bill 10, an offender who commits a sex offense is found to be either a "sex offender" or a "child-victim offender." Then, depending on the sex offense the offender committed, the offender is placed in Tier I, Tier II, or Tier III. Trial courts no longer have discretion in imposing a certain classification on offenders, and an offender's likelihood to reoffend is no longer considered. Rather, offenders are now classified solely on the offense for which they were convicted. State v. Clay, 177 Ohio App.3d 78,2008-Ohio-2980, ¶ 6. Offenders, however, are automatically placed into a higher tier if (1) they have a prior conviction for a sexually-oriented or child-victim-oriented offense, or (2) they have been previously classified as sexual predators. Id. at ¶ 7.
 {¶ 17} Senate Bill 10 also provides for the reclassification of all offenders who were classified prior to its enactment. In re Smith, Allen App. No. 1-07-58, 2008-Ohio-3234, ¶ 32. The reclassification affords no deference to the prior classification given by the trial court. Rather, offenders are reclassified under Senate Bill 10 solely on the offense for which they were convicted. Id.
 {¶ 18} Of the three tiers, Tier I is the lowest tier and Tier III is the highest tier. Each tier has registration requirements, but they differ in terms of the duration of the duty and the frequency of the in-person address verification. The registration requirements under Senate *Page 7 
Bill 10 are also longer in duration than their counterparts under former R.C. Chapter 2950. Tier I offenders are required to register for 15 years and to verify their addresses annually, but there are no community notification requirements. Tier II offenders are required to register for 25 years and to verify their addresses every 180 days, but there are no community notification requirements. Finally, Tier III offenders (similar to the former sexual predator classification) are required to register for life and to verify their addresses every 90 days; community notification may occur every 90 days for life.
 {¶ 19} We now turn to appellant's constitutional arguments. The crux of appellant's arguments is that by tying sex offender classification, registration, and community notification requirements solely to the crime committed by the offender, without any consideration of the offender's likelihood of reoffending, Senate Bill 10 has created a sex-offender registration scheme that is no longer remedial and civil in nature. Rather, sex offender registration under Senate Bill 10 is purely punitive and is in fact part of the original sentence.
 {¶ 20} It is well-established that "statutes enjoy a strong presumption of constitutionality." Cook, 83 Ohio St.3d at 409. "A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality. That presumption of validity of such legislative enactment cannot be overcome unless it appear[s] that there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution." Id. (Internal citations omitted.)
 {¶ 21} Accordingly, we begin with the strong presumption that Senate Bill 10 is constitutional.
 THE RETROACTIVE CLAUSE OF THE OHIO CONSTITUTION {¶ 22} Appellant argues that the classification, registration, and residency provisions of Senate Bill 10 violate the Ohio Constitution's prohibition on retroactive laws. We note that *Page 8 
appellant also challenges the constitutionality of Senate Bill 10's residency provision on two other grounds, to wit: it violates the Ex Post Facto Clause of the United States Constitution and his due process rights. For purposes of clarity and concise analysis, we will address appellant's constitutional arguments regarding the residency provision under its own headline.
 {¶ 23} Section 28, Article II of the Ohio Constitution provides that "[t]he general assembly shall have no power to pass retroactive laws." Further, statutes are presumed to apply only prospectively unless specifically made retroactive. R.C. 1.48. In determining whether a statute is unconstitutionally retroactive, courts must apply a two-part test. Hyle v. Porter, 117 Ohio St.3d 165, 2008-Ohio-542, ¶ 8. "Under this test, we first ask whether the legislature expressly made the statute retroactive. If it did, then we determine whether the statutory restriction is substantive or remedial in nature. The first part of the test determines whether the legislature `expressly made [the statute] retroactive,' as required by R.C. 1.48; the second part determines whether it was empowered to do so." Id., citing Van Fossen v. BabcockWilcox Co. (1988), 36 Ohio St.3d 100.
Whether Senate Bill 10's classification and registration provisionsapply retroactively
 {¶ 24} We find that the classification and registration provisions of Senate Bill 10 were intended to apply retroactively. Under Senate Bill 10, R.C. 2950.03 governs when a person "who has been convicted of, is convicted of, has pleaded guilty to, or pleads guilty to a sexually oriented offense or a child-victim oriented offense and who has a duty to register" must be given notice of that duty. Subsections 1 and 2 of the provision apply to sex offenders "[r]egardless of when the person committed the sexually oriented offense or child-victim oriented offense[.]" Subsection 5 refers to sex offenders who prior to December 1, 2007 had registered under former R.C. Chapter 2950.
 {¶ 25} R.C. 2950.031 provides that at any time on or after July 1, 2007, and no later than December 1, 2007, the attorney general must determine for each offender who prior to *Page 9 
December 1, 2007 had registered under former R.C. Chapter 2950, their new classification under Senate Bill 10. Likewise, R.C. 2950.032
provides that at any time on or after July 1, 2007, and no later than December 1, 2007, the attorney general must determine for each offender who on December 1, 2007, will be serving a prison term for a sexually-oriented offense, their classification under Senate Bill 10. R.C. 2950.04, the registration provision of Senate Bill 10, imposes a duty to register and comply with registration requirements on every "offender who is convicted of, pleads guilty to, has been convicted of, or has pleaded guilty to a sexually oriented offense," "[r]egardless of when the sexually oriented offense was committed[.]"
 {¶ 26} "All of the above shows the [legislature's] express intention for those sections to be applicable to acts committed or facts in existence prior to the effective date of [Senate Bill 10]."Byers, 2008-Ohio-5051, ¶ 63 (emphasis added). Thus, Senate Bill 10's tier classification system and its registration provision were intended to apply retroactively to all offenders. "That, however, is not a determination that all of Senate Bill 10 applies retroactively." Id. As our analysis regarding Senate Bill 10's residency provision shows below, the residency provision is not retroactive.
 Whether Senate Bill 10 is remedial or substantive {¶ 27} Having determined that the classification and registration provisions of Senate Bill 10 meet the threshold test for retroactive application under R.C. 1.48, we must now determine whether the provisions violate Section 28, Article II of the Ohio Constitution. That is, we must determine whether Senate Bill 10 is substantive or merely remedial. Cook, 83 Ohio St.3d at 410-411. The retroactive application of a substantive statute violates the Ohio Constitution but the retroactive application of a remedial statute does not. Hyle, 117 Ohio St.3d at ¶ 7.
 {¶ 28} "A statute is `substantive' if it impairs or takes away vested rights, affects an *Page 10 
accrued substantive right, imposes new or additional burdens, duties, obligation, or liabilities as to a past transaction, or creates a new right. Conversely, remedial laws are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right. A purely remedial statute does not violate Section 28, Article II of the Ohio Constitution, even if applied retroactively. Further, while we have recognized the occasional substantive effect, it is generally true that laws that relate to procedures are ordinarily remedial in nature."Cook at 411 (internal citations omitted).
 {¶ 29} At the outset, we note that Senate Bill 10 is replete with references to the legislative's "intent to protect the safety and general welfare of the people of this state" and to "assur[e] public protection," in light of the legislative determination that "[s]ex offenders and child-victim offenders pose a risk of engaging in further sexually abusive behavior even after being released from imprisonment." R.C. 2950.02. This legislative intent was already in existence when the supreme court in Cook addressed whether the classification and registration provisions of former R.C. Chapter 2950 violated Section 28, Article II of the Ohio Constitution.
 {¶ 30} In Cook, the defendant attempted to challenge the 1997 version of former R.C. Chapter 2950, which changed the frequency and duration of the previous sex-offender registration requirements, and which increased the number of classifications from one to three different classifications (sexually-oriented offender, habitual sexual offender, and sexual predator). The supreme court rejected the argument that these provisions under the 1997 version of former R.C. Chapter 2950 were substantive because they imposed additional burdens with respect to a past transaction:
 {¶ 31} "However, under the former provisions, habitual sex offenders were already required to register with their county sheriff. * * * Only the frequency and duration of the registration requirements have changed. Frequency of registration has increased * * *. *Page 11 
Duration has increased * * *. Further, the number of classifications has increased from one * * * to three[.] This court has held that where no vested right has been created, `a later enactment will not burden or attach a new disability to a past transaction or consideration in the constitutional sense, unless the past transaction or consideration * ** created at least a reasonable expectation of finality.' * * * We held that `[e]xcept with regard to constitutional protections against ex postfacto laws * * * felons have no reasonable right to expect that theirconduct will never thereafter be made the subject of legislation.'"Cook, 83 Ohio St.3d at 411-412, quoting State ex rel. Matz v. Brown
(1988), 37 Ohio St.3d 279 (emphasis sic).
 {¶ 32} The supreme court "conclude[d] that the registration and address verification provisions of [former] R.C. Chapter 2950 are deminimis procedural requirements that are necessary to achieve the goals of [former] R.C. Chapter 2950." Cook at 412. In so ruling, the supreme court concurred with the reasoning of the New Jersey Supreme Court inDoe v. Poritz (1995), 142 N.J. 1, 662 A.2d 367, which held that:
 {¶ 33} "The Legislature reached the irresistible conclusion that if community safety was its objective, there was no justification for applying these laws only to those who offend or who are convicted in the future, and not applying them to previously-convicted offenders. * * * The Legislature concluded that there was no justification for protecting only children of the future from the risk of reoffense by future offenders, and not today's children from the risk of reoffense by previously-convicted offenders, when the nature of those risks were identical and presently arose almost exclusively from previously-convicted offenders, their numbers now and for a fair number of years obviously vastly exceeding the number of those who, after passage of these laws, will be convicted and released and only then, for the first time, potentially subject to community notification.'"Cook at 413, quoting Poritz, 142 N.J. at 13-14, 662 A.2d at 373.
 {¶ 34} As a result, the Ohio Supreme Court held that "the registration and verification *Page 12 
provisions are remedial in nature and do not violate the ban on retroactive laws set forth in Section 28, Article II of the Ohio Constitution." Cook at 413. The supreme court further stated that "`[t]he harsh consequences [of] classification and community notification come not as a direct result of the sexual offender law, but instead as a direct societal consequence of [the offender's] past actions.'" Id., quoting State v. Lyttle (Dec. 22, 1997), Butler App. No. CA97-03-060, at 27.
 {¶ 35} As noted earlier, Senate Bill 10 abolished the three prior classifications in former R.C. Chapter 2950 and replaced them with a new three-tiered system. The designations have changed but the sex offenders are still classified into one out of three different categories. The registration requirements for the first two tiers under Senate Bill 10 are longer in duration than their counterparts under former R.C. Chapter 2950; however, whether a sex offender was classified as a sexual predator under former R.C. Chapter 2950 or is classified as a Tier III Sex Offender under Senate Bill 10, the offender is required to register for life. The frequency of the in-person address verification for each tier under Senate Bill 10 is identical to the frequency required under former R.C. Chapter 2950 for each classification.
 {¶ 36} As the Clermont County Common Pleas Court noted in Slagle v.State, 145 Ohio Misc.2d 98, 2008-Ohio-593, "as it currently stands,Cook is good law and must be followed by this court." Id. at ¶ 40. The Ohio Supreme Court has continued to indicate the remedial nature of sex offender classification statutes. See Williams, 88 Ohio St.3d at 528;Ferguson, 2008-Ohio-4824, ¶ 29. As a result, we find that the classification and registrations provisions of Senate Bill 10 are remedial in nature and do not violate the ban on retroactive laws set forth in Section 28, Article II of the Ohio Constitution.Slagle at ¶ 40; Byers, 2008-Ohio-5051, ¶ 69. *Page 13 
 EX POST FACTO {¶ 37} Appellant argues that applying Senate Bill 10 to crimes that occurred before January 1, 2008, violates the Ex Post Facto Clause of the United States Constitution.
 {¶ 38} Section 10, Article I of the United States Constitution prohibits ex post facto laws. An ex post facto law "punishes as a crime an act previously committed, which was innocent when done, [or] which makes more burdensome the punishment for a crime, after its commission."Cook, 83 Ohio St.3d at 414. The Ex Post Facto Clause, however, only applies to criminal statutes. Id. at 415.
 {¶ 39} To determine whether Senate Bill 10 is a civil or criminal statute for purposes of an ex post facto analysis, we apply the "intent-effects" test. Id. We must first determine whether the legislature meant Senate Bill 10 to be a civil statute and nonpunitive, or to impose punishment. A determination that the legislature intended the statute to be punitive ends the analysis and results in a finding that the statute is unconstitutional. If, however, the legislature's intent was to enact a regulatory scheme that is civil and nonpunitive, we must then determine whether the statutory scheme is so punitive either in purpose or effect as to negate the legislature's intent. Id.;Smith v. Doe (2002), 538 U.S. 84, 92, 123 S.Ct. 1140; In re G.E.S., Summit App. No. 24079, 2008-Ohio-4076, ¶ 18.
 The legislature's intent in enacting Senate Bill 10 {¶ 40} Upon reviewing Senate Bill 10, we find that the legislature's intent in enacting the statute was civil, not punitive. "A court must look to the language and the purpose of the statute in order to determine legislative intent." Cook at 416. Senate Bill 10 is devoid of any language indicating an intent to punish. To the contrary, and just as the supreme court found in Cook with regard to former R.C. Chapter 2950, the legislature has expressly declared that the intent of Senate Bill 10 is "to protect the safety and general welfare of the people of this state," which is "a paramount governmental interest;" and that "the exchange or release of *Page 14 
[information required by this law] is not punitive." R.C. 2950.02;Cook at 417. In fact, the language in former R.C. Chapter 2950, which the supreme court in Cook relied on to find that the legislature's intent was remedial, is almost identical to the language used in Senate Bill 10. The only difference is the use of the new tier classification labels in lieu of the former classification labels.
 {¶ 41} Appellant nevertheless argues that the legislature intended Senate Bill 10 to be punitive because (1) an offender's classification and registration obligations depend solely on the offense committed, rather than the offender's risk to the community or likelihood of reoffending; (2) Senate Bill 10 criminalizes an offender's failure to comply with the registration and verification requirements; and (3) the legislature placed Senate Bill 10 within Title 29, Ohio's Criminal Code. We disagree.
 {¶ 42} Appellant's first argument was rejected by two appellate courts. In State v. King, Miami App. No. 08-CA-02, 2008-Ohio-2594, the Second Appellate District stated: "[The offender's] attempt to divine punitive intent from the absence of any individualized risk assessment under S.B. 10 is unavailing. As noted above, the new legislation automatically places offenders into one of three tiers based solely on the offense of conviction and imposes corresponding registration requirements. In [Doe, 538 U.S. 84], the United States Supreme Court recognized that a legislature may take such a categorical approach without transforming a regulatory scheme into a punitive one."King at ¶ 12; see, also, Desbiens, 2008-Ohio-3375.
 {¶ 43} Likewise, the Seventh Appellate District stated: "However, [former] R.C. Chapter 2950's classification was also partially tied to the offense. * * * [I]t cannot necessarily be concluded that Senate Bill 10's tiers are not directly tied to the ongoing threat to the community that sex offenders pose. The types of offenses that are placed in Tier I are less severe sex offenses, Tier II are more severe, and Tier III are the most severe offenses. Also within these tiers are some factual determination, such as if the offense was sexually *Page 15 
motivated, age of victim and offender, and consent. Likewise, every time an offender commits another sexually oriented offense the tier level rises. R.C. 2950.01(F)(1)(i) and (G)(1)(i). This formula detailed by the legislature illustrates that it is considering protecting the public. Consequently, this new formula does not appear to change the spelled out intent of the General Assembly in R.C. 2950.02." Byers, 2008-Ohio-5051, ¶ 25-26.
 {¶ 44} We agree with the foregoing analyses. The legislature's intent in enacting Senate Bill 10 was not punitive simply because an offender's classification and registration obligations depend on the offense committed, rather than on the offender's risk to the community or likelihood of reoffending.
 {¶ 45} Next, appellant argues that the legislature intended Senate Bill 10 to be punitive because the statute criminalizes an offender's failure to comply with the registration and verification requirements. We disagree.
 {¶ 46} Failure to register was already a punishable offense before former R.C. Chapter 2950. See Cook, 83 Ohio St.3d at 420. As the Ninth Appellate District stated, "these provisions do not impact [Senate Bill 10's] remedial nature. The pre-[Senate Bill 10] statutory scheme also criminalized an offender's failure to comply with the registration and verification requirements. See former R.C. 2950.06(G)(1); former R.C. 2950.99. [In Cook], the Ohio Supreme Court specifically noted these provisions in its retroactivity discussion, but did not identify these provisions as presenting a problem in its Ex Post Facto analysis. * * * See, also, Doe, 538 [U.S.] at 101-102 (noting that criminal prosecution for failure to comply with SORA's reporting requirements is a proceeding separate from the individual's original offense). Furthermore, [the offender] has not provided any law that demonstrate that [Senate Bill 10's] penalties are more burdensome than the former penalties or make formerly innocent conduct criminal." In re G.E.S., 2008-Ohio-4076, ¶ 23.
 {¶ 47} We therefore find that the legislature's intent in enacting Senate Bill 10 was not *Page 16 
punitive simply because Senate Bill 10 criminalizes an offender's failure to comply with the registration and verification requirements.
 {¶ 48} Finally, appellant argues that because the legislature placed Senate Bill 10 in Ohio's Criminal Code, it intended Senate Bill 10 to be punitive. This argument is not persuasive. "The location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one." Doe, 538 U.S. at 94. As the Seventh Appellate District aptly stated," [former] R.C. Chapter 2950 was within the criminal code, yet the Ohio Supreme Court determined that it was civil in nature. While [Senate Bill 10] is in the criminal code, that placement is not dispositive of the issue, especially since the legislature specifically indicated the intent to be civil." Byers, 2008-Ohio-5051, ¶ 27; see, also, King, 2008-Ohio-2594, ¶ 12; In re G.E.S., 2008-Ohio-4076, ¶ 21-22.
 {¶ 49} We therefore find that the legislature's intent in enacting Senate Bill 10 was remedial, not punitive.
 Whether Senate Bill 10 has a punitive effect {¶ 50} We now move to the "effects" prong of the test and determine whether Senate Bill 10 has a punitive effect such that its effect negates the legislative intent. "[O]nly the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Doe, 538 U.S. at 92;Cook, 83 Ohio St.3d at 418. The United States Supreme Court has "fashioned useful guideposts for determining whether a statute is punitive." Cook, citing Kennedy v. Mendoza-Martinez (1963),372 U.S. 144, 83 S.Ct. 554. The guideposts are as follows:
 {¶ 51} "[1] whether the sanction involves an affirmative disability or restraint; [2] whether it has historically been regarded as a punishment; [3] whether it comes into play only on a finding of scienter; [4] whether its operation will promote the traditional aims of punishment — retribution and deterrence; [5] whether the behavior to which it applies is *Page 17 
already a crime; [6] whether an alternative purpose to which it may rationally be connected is assignable for it; and [7] whether it appears excessive in relation to the alternative purpose assigned."Cook at 418. While useful, the following guideposts are "neither exhaustive nor dispositive." Doe at 97.
 {¶ 52} On appeal, although he cites five of the foregoing guideposts, appellant only addresses three of the guideposts. Specifically, appellant argues that Senate Bill 10 imposes burdens that operate as affirmative disabilities and restraints; is analogous to colonial punishments; and furthers the traditional aims of punishment. We find that appellant has not come forward with the "clearest proof" that the effect of Senate Bill 10 is so punitive that it overcomes the legislature's non-punitive intent.
 {¶ 53} Appellant first asserts that Senate Bill 10 imposes a new affirmative disability or restraint. In Cook, the supreme court found that former R.C. Chapter 2950 imposed no new affirmative disability or restraint: "The act of registering does not restrain the offender in any way. Registering may cause some inconvenience for offenders. However, the inconvenience is comparable to renewing a driver's license. Thus we find that the inconvenience of registration is a de minimis administrative requirement.
 {¶ 54} "[Former] R.C. Chapter 2950 also requires that information be disseminated to certain persons. Admittedly, that information could have a detrimental effect on offenders, causing them to be ostracized and subjecting them to embarrassment or harassment. However, `whether a sanction constitutes punishment is not determined from the defendant's perspective, as even remedial sanctions carry the "sting of punishment."' In addition, the burden of dissemination is not imposed on the defendant, but rather on law enforcement." Cook at 418 (internal citations omitted).
 {¶ 55} In King, the Second Appellate District held that: "InCook, * * * the court reasoned that the act of registering as a sex offender does not impose any restraint. This *Page 18 
remains true regardless of whether King is required to register once a year for ten years, as under the old law, or * * * for twenty-five years, as S.B. 10 now requires. Although S.B. 10 also requires King to disclose a substantial amount of personal information that may be subject to dissemination over the Internet, the same was true in [the Ohio Supreme Court's decision in Wilson] as pointed out by the three-member dissent in that case, and in [Doe]. On this issue, we fail to see a constitutionally meaningful distinction between S.B. 10 and the version of R.C. Chapter 2950 in effect when Wilson was decided. * * * Therefore, in light of existing precedent, we do not find that S.B. 10 imposes an affirmative disability or restraint." King, 2008-Ohio-2594, ¶ 16.
 {¶ 56} The Ninth Appellate District likewise rejected appellant's argument: "The [United States] Supreme Court reasoned [in Doe that while SORA required offenders to notify authorities if they changed address, place of employment, or physical appearance, the statute did not require offenders `to seek permission to do so.' * * * Offenders were free to make these changes so long as they forewarned authorities. While the Supreme Court did not have to consider the matter of in-person registration, as SORA contained no such requirement, the Ohio Supreme Court upheld the [former R.C. Chapter 2950] statutory scheme's in-person registration requirement in Cook.
 {¶ 57} "As with the statutory schemes in Doe and Cook, [Senate Bill 10] does not impose any constitutional disabilities or restraints[.] * * * [Senate Bill 10] does not restrain [sex offenders] or otherwise forbid them from engaging in activities. * * * [F]reedom from humiliation and other disagreeable consequences is not a constitutional right. Such humiliation or ostracism may flow naturally from an underlying conviction (including convictions for non-sexually oriented offenses) regardless of [Senate Bill 10's] applicability. We do not ignore the potential impact of [Senate Bill 10], but `whether a sanction constitutes punishment is not determined from the defendant's perspective, as even remedial sanctions carry the sting of *Page 19 
punishment.'" In re G.E.S., 2008-Ohio-4076, ¶ 29-30 (internal citations omitted).
 {¶ 58} In Byers, the Seventh Appellate District acknowledged that "sex offender registration under Senate Bill 10 * * * requires more than the version discussed in Cook" as Senate Bill 10 requires sex offenders to register in several counties and to provide a substantial amount of personal information. Byers, 2008-Ohio-5051, ¶ 31-32. "As can be seen, these requirements are more involved than the registration requirements in the version discussed in Cook. However, the Ohio Supreme Court has continually stated that sex offender classifications are civil in nature. Most recently, in [Wilson], the Court restated the decision inCook that the sex offenders classification laws are remedial, not punitive. The registration statute that was in effect inWilson, is not too different from Senate Bill 10's version. * * * We must follow the Supreme Court's decision in Cook and the majority decision inWilson that offender classification is civil in nature and the registration requirement is still de minimis; Cook and Wilson are still controlling law." Id. at ¶ 37. See, also, Ferguson, 2008-Ohio-4824
(finding that amendments to former R.C. Chapter 2950 expanding registration and notification requirements did not violate the Ex Post Facto Clause; reaffirming that sex offenders classification laws are remedial; and stating that the dissent in Wilson had no precedential value).
 {¶ 59} With regard to the issue of dissemination of information on the offender to the public, the Seventh Appellate District held that: "It is noted that the dissemination requirements under the Senate Bill 10 version of R.C. Chapter 2950 falls upon law enforcement, like the prior version, and puts none of this duty on the offender. Consequently, for the same reasoning as in Cook, we find that R.C. Chapter 2950, as changed by Senate Bill 10, does not impose a new affirmative disability or restraint." Byers at ¶ 38.
 {¶ 60} We agree with the foregoing analyses and find them to be persuasive. We therefore find that Senate Bill 10 does not imposes a new affirmative disability or restraint. *Page 20 
 {¶ 61} Next, appellant asserts that Senate Bill 10 is analogous to "colonial punishments of `public shaming, humiliation, and banishment,'" and that the wide dissemination of sex offenders' personal information "resemble shaming punishments intended to inflict public disgrace." We disagree.
 {¶ 62} We initially note that in Cook, the supreme court recognized that registration has long been a valid regulatory technique with a remedial purpose; Ohio has had a registration requirement since 1963; and public dissemination of registered information about a sex offender has not been regarded as punishment when done in furtherance of a legitimate governmental interest. Cook, 83 Ohio St.3d at 418-419.
 {¶ 63} In Doe, the United States Supreme Court addressed, and rejected, a similar argument:
 {¶ 64} "Any initial resemblance to early punishment is, however, misleading. * * * Even punishments that lacked the corporal component, such as public shaming, humiliation, and banishment, involved more than the dissemination of information. They either held the person up before his fellow citizens for face-to-face shaming or expelled him from the community. By contrast, the stigma of Alaska's Megan's Law results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public. Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment. * * * The publicity may cause adverse consequences for the convicted defendant, running from mild embarrassment to social ostracism. In contrast to the colonial shaming punishments, however, the State does not make the publicity and the resulting stigma an integral part of the objective of the regulatory scheme.
 {¶ 65} "The fact that Alaska posts the information on the Internet does not alter our conclusion. It must be acknowledged that notice of a criminal conviction subjects the offender *Page 21 
to public shame, the humiliation increasing in proportion to the extent of the publicity. And the geographic reach of the Internet is greater than anything which could have been designed in colonial times. These facts do not render Internet notification punitive. The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation." Doe,538 U.S. at 98-99.
 {¶ 66} In light of the foregoing, we find that Senate Bill 10 is not analogous to colonial punishments; nor does the wide dissemination of sex offenders' personal information resemble shaming punishments.King, 2008-Ohio-2594, ¶ 17-20; In re G.E.S., 2008-Ohio-4076, ¶ 31; see, also, Byers, 2008-Ohio-5051, ¶ 49-54 (finding that the registration and notification provisions of Senate Bill 10 were non-punitive and reasonably necessary for the intended purpose of protecting the public, even though Senate Bill 10 requires more information to be given by the offender when registering than under former R.C. Chapter 2950, and even though information about a sex offender is more widely and readily available than at the time Cook was decided).
 {¶ 67} Finally, appellant asserts that Senate Bill 10 furthers the traditional aims of punishment, to wit: retribution and deterrence.
 {¶ 68} "Retribution is vengeance for its own sake. It does not seek to affect future conduct or solve any problem except realizing justice. Deterrent measures serve as a threat of negative repercussions to discourage people from engaging in certain behavior. Remedial measures, on the other hand, seek to solve a problem, for instance by removing the likely perpetrators of future corruption." Cook, 83 Ohio St.3d at 420, quoting Artway v. New Jersey Atty. Gen. (C.A.3, 1996), 81 F.3d 1235,1255.
 {¶ 69} Relying on these definitions, the supreme court inCook found that the *Page 22 
registration and notification provisions of former R.C. Chapter 2950
neither sought vengeance for vengeance's sake nor retribution.Cook at 420. Rather, the provisions were remedial because they sought to collect and disseminate information to protect the public from registrants who may reoffend. Id. The supreme court further found that former R.C. Chapter 2950 did not have a deterrent effect as sex offenders "are not deterred even by the threat of incarceration." Id. Further, "deterrence alone is insufficient to make a statute punitive." Id.
 {¶ 70} We find that the same reasoning applies to Senate Bill 10.Byers at ¶ 41. "Our review of [Senate Bill 10] convinces us thatCook applies to the vast majority of its provisions, which are targeted to maximize the flow of information to the public. [Senate Bill 10] attempts to `solve a problem' by keeping the public well informed of possible sources of danger. We cannot say that any of the additions to the [former R.C. Chapter 2950] statutory scheme, which are comprised mainly of additional demands from offenders, transform the scheme into one that has either a noticeable retributive or deterrent effect."In re G.E.S. at ¶ 35 (internal citations omitted).
 {¶ 71} Further, "[b]y tying an offender's classification to the offense committed rather than to an individual assessment of dangerousness, the [legislature] merely adopted an alternative approach to the regulation and categorization of sex offenders. In [Doe], the United States Supreme Court expressly rejected an argument that Alaska's sex-offender registration obligations were retributive because they were based on the crime committed rather than the particular risk an offender posed. * * * Similarly, the [Doe] court rejected the notion that deterrence resulting from Alaska's statute was sufficient to establish a punitive effect." King at ¶ 22.
 {¶ 72} We find that Senate Bill 10 does not promote the traditional aims of punishment-retribution and deterrence.
 {¶ 73} We note that the remaining Kennedy guideposts, which were not argued by *Page 23 
appellant with regard to Senate Bill 10, were addressed by Ohio appellate courts and found to be inapplicable. See Byers at ¶ 39, 40, 42-54; In re G.E.S. at ¶ 33-34, 38-40; King at ¶ 23-29.
 {¶ 74} In light of all of the foregoing, we reject appellant's argument that Senate Bill 10 is so punitive in effect that it negates the legislature's non-punitive intent. Appellant cannot show, much less by the clearest proof, that the effects of Senate Bill 10 negate the legislature's intent to establish a civil regulatory scheme. The guideposts set forth in Kennedy and argued by appellant indicate that Senate Bill 10 serves the solely remedial purpose of protecting the public. While the notification requirements may be a detriment to registered sex offenders, "the sting of public censure does not convert a remedial statute into a punitive one." Cook, 83 Ohio St.3d. at 423.
 {¶ 75} We therefore find that Senate Bill 10 is remedial, and not punitive, and that the retroactive application of its classification, registration, and notification provisions do not violate the Ex Post Facto Clause of the United States Constitution.
 SENATE BILL 10'S RESIDENCY PROVISION {¶ 76} Appellant argues that Senate Bill 10's residency provision violates the Ohio Constitution's ban on retroactive laws, the Ex Post Facto Clause of the United States Constitution, and his due process rights. The residency provision prohibits any "person who has been convicted of, is convicted of, has pleaded guilty to, or pleads guilty to a sexually oriented offense [from] establish[ing] a residence or occupy[ing] residential premises within [1,000] feet of any school premises or preschool or child day-care center premises." The crux of appellant's arguments is that (1) because the legislature has mandated that Senate Bill 10 be applied retroactively, the residency provision is unconstitutionally retroactive, and (2) the residency provision operates as a direct restraint on a person's liberty and infringes a person's right to live and work where they wish.
 {¶ 77} Appellant challenges the fact that under Senate Bill 10, he "is categorically *Page 24 
barred from residing within 1,000 feet of a school, preschool, or day-care center." We note that there is absolutely no evidence in the record before us, nor does appellant claim, that he currently resides within 1,000 feet of a school, preschool, or day-care center. Nor has appellant alleged he was forced to move from an area due to his proximity to a school, preschool, or day-care center, or that he has any intention of moving to a residence within 1,000 feet of a school, preschool, or day-care center.
 {¶ 78} Assuming, arguendo, that appellant currently resides within 1,000 feet of a school, preschool, or day-care center and that he wasresiding there before July 1, 2007 (the effective date for Senate Bill 10's residency provision), we find that the Ohio Supreme Court's decision in Hyle, 117 Ohio St.3d 165, applies. Appellant committed his offense before July 1, 2007.
 {¶ 79} In Hyle, the supreme court was asked to determine whether the residency provision in former R.C. Chapter 2950, which prohibited certain sexually-oriented offenders from living within 1,000 feet of a school, could be applied to an offender who had bought his home and committed his offense before the effective date of the statute. The provision at the time provided that "[n]o person who has been convicted of, is convicted of, has pleaded guilty to, or pleads guilty to either a sexually oriented offense or a child-victim oriented offense shall establish a residence or occupy residential premises within [1,000] feet of any school premises."
 {¶ 80} The supreme court held that the residency provision in former R.C. Chapter 2950 did not apply retroactively to an offender who had bought his home or resided in a home and had committed sex offenses prior to the statute's effective date:
 {¶ 81} "On review of the text of [the former residency provision], we find that neither the description of convicted sex offenders nor the description of prohibited acts includes a clear declaration of retroactivity. Although we acknowledge that the language of [the *Page 25 
provision] is ambiguous regarding its prospective or retroactive application, we emphasize that ambiguous language is not sufficient to overcome the presumption of prospective application. The language in [the provision] presents at best a suggestion of retroactivity, which is not sufficient to establish that a statute applies retroactively.
 {¶ 82} "* * *
 {¶ 83} "Our conclusion that [the residency provision] was not expressly made retrospective precludes us from addressing the constitutional prohibition against retroactivity. * * * We hold that because [the provision] was not expressly made retroactive, it does not apply to an offender who bought his home and committed his offense before the effective date of the statute." Hyle at ¶ 13, 24.
 {¶ 84} When comparing the language of the residency provision in Senate Bill 10 and its counterpart in former R.C. Chapter 2950, the only differences between the two provisions are that Senate Bill 10's residency provision prohibits all sexually-oriented offenders, and not certain sexually-oriented offenders, from living within 1,000 feet of a preschool or day-care center, in addition to a school. Those differences are minor and do not impact the analysis in Hyle. The reasoning inHyle therefore applies. Accordingly, we find that Senate Bill 10's residency provision does not apply to an offender who bought his home or resided in a home and committed his offense before July 1, 2007, the effective date of Senate Bill 10's residency provision. SeeByers, 2008-Ohio-5051, ¶ 98-99.
 {¶ 85} Next, appellant argues that the residency provision violates the Ex Post Facto Clause of the United States Constitution because it imposes an affirmative disability or restraint and resembles colonial punishments. We disagree.
 {¶ 86} In King, the Second Appellate District noted that "we fail to see a constitutionally meaningful distinction between S.B. 10 and the version of R.C. Chapter 2950 in effect when [the supreme court's decision in Wilson] was decided. Likewise, while S.B. 10 *Page 26 
precludes sex offenders from living within 1,000 feet of certain facilities, a similar restriction existed when the Wilson majority declared [former] R.C. Chapter 2950 to be non-punitive. Therefore, in light of existing precedent, we do not find that S.B. 10 imposes an affirmative disability or restraint." King, 2008-Ohio-2594, ¶ 16.
 {¶ 87} In Coston v. Petro (S.D.Ohio 2005), 398 F.Supp.2d 878, the district court held that the residency provision in former R.C. Chapter 2950 was neither a criminal provision nor did it have a punitive effect. As noted earlier, Senate Bill 10 only made a slight change to the residency provision in former R.C. Chapter 2950 by adding day-cares and preschools to the residency prohibition; no drastic change was made. The reasoning in Coston was as follows:
 {¶ 88} "[The residency provision] does not, however, impose punishment and accordingly is not a criminal statute. [The provision] on its face imposes no criminal sanctions * * * and the expressed intent of the sex offender registration statute is to protect the safety and general welfare of the public. * * *
 {¶ 89} "* * *
 {¶ 90} "[A]lthough [the provision] prohibits sex offenders from living within the designated areas, this statute is unlike the traditional punishment of banishment because sex offenders are not expelled from the community or even prohibited from accessing these areas for employment or conducting commercial transactions. * * * [The provision] does impose an affirmative restraint or disability in that registered sex offenders are precluded from living within designated areas of the state. Nevertheless, [the provision] imposes no physical restraint on sex offenders and in fact is less restrictive than the involuntary commitment provisions for mentally ill sex offenders held to be nonpunitive in Kansas v. Hendricks, 521 U.S. 346, 363-65, 117 S.Ct. 2072
(1997). [S]ex offenders are free to move about within the zone, but they cannot establish a permanent residence there. Therefore, the Court cannot *Page 27 
conclude that this relatively limited restraint on sex offenders constitutes punishment."[2] Coston, 398 F.Supp.2d at 885-886. But see, contra, Mikaloff v. Walsh (N.D.Ohio 2007), 2007 WL 2572268 (declaring that Senate Bill 10's residency provision violated the Ex Post Facto Clause of the United States Constitution and enjoining prosecutors from enforcing the provision against the plaintiff, a sex offender who was living within 1,000 feet of a school).[3]
 {¶ 91} Finally, appellant argues that the residency provision violates his due process rights. Assuming appellant's argument is based on an assumption that the provision will eventually affect him, we decline to address appellant's argument. As noted earlier, appellant has not alleged he was forced to move from an area due to his proximity to a school, preschool, or day-care center, or that he has any intention of moving to a residence within 1,000 feet of a school, preschool, or day-care center. Appellant has failed to show he has suffered any actual deprivation of his rights by operation of Senate Bill 10's residency provision.
 {¶ 92} It follows that appellant lacks standing to raise constitutional challenges to Senate Bill 10's residency provision: "It has been held that a defendant lacks standing to challenge the constitutionality of [the residency provision] where the record fails to show whether the defendant has suffered an actual deprivation of his property rights by operation of *Page 28 
[the residency provision]." State v. Amos, Cuyahoga App. No. 89855,2008-Ohio-1834, ¶ 43 (addressing a constitutional challenge to the residency provision in former R.C. Chapter 2950).
 {¶ 93} "The constitutionality of a state statute may not be brought into question by one who is not within the class against whom the operation of the statute is alleged to have been unconstitutionally applied and who has not been injured by its alleged unconstitutional provision." State v. Bruce, Cuyahoga App. No. 89641, 2008-Ohio-926, ¶ 12. "[Defendant] has failed to provide any evidence to demonstrate an injury in fact or an actual deprivation of his property rights or his right to privacy. Neither can he prosecute a facial challenge in order to assert the rights of third parties not before the court." Id., citingCoston, 398 F.Supp.2d at 884 (both decisions addressing a constitutional challenge to the residency provision in former R.C. Chapter 2950).
 {¶ 94} We therefore find that Senate Bill 10's residency provision does not apply to a sex offender who bought his home or resided in a home and committed his offense before July 1, 2007, the effective date of the residency provision; the provision does not violate the Ex Post Facto Clause of the United States Constitution; and appellant lacks standing to challenge the constitutionality of Senate Bill 10's residency provision on due process grounds.
 SEPARATION OF POWERS {¶ 95} Appellant argues that Senate Bill 10 violates the separation-of-powers doctrine "inherent in Ohio's constitutional framework by unconstitutionally limiting the powers of the judicial branch of the government." Specifically, "Senate Bill 10 divests the judiciary branch of its power to sentence a defendant [b]y automatically directing a trial court to place an offender in a specific tier based on the crime with which a defendant is convicted[.]"
 {¶ 96} The Ohio Constitution vests the legislative power of the state in the General Assembly, the executive power in the Governor, and the judicial power in the courts. "A *Page 29 
statute that violates the doctrine of separation of powers is unconstitutional." State ex rel. Ohio Academy of Trial Lawyers v.Sheward, 86 Ohio St.3d 451, 475, 1999-Ohio-123. "The principle of separation of powers is embedded in the constitutional framework of our state government. The Ohio Constitution applies the principle in defining the nature and scope of powers designated to the three branches of the government. It is inherent in our theory of government `that each of the three grand divisions of the government, must be protected from the encroachments of the others, so far that its integrity and independence may be preserved.'" Id. (internal citations omitted).
 {¶ 97} Senate Bill 10, however, does not violate the doctrine of separation of powers.
 {¶ 98} As the Third Appellate District stated in In re Smith,2008-Ohio-3234:
 {¶ 99} "However, we note that the classification of sex offenders has always been a legislative mandate, not an inherent power of the courts. Without the legislature's creation of sex offender classifications, no such classification would be warranted. Therefore, * * * we cannot find that sex offender classification is anything other than a creation of the legislature, and therefore, the power to classify is properly expanded or limited by the legislature." Id. at ¶ 39 (internal citation omitted).
 {¶ 100} Or, as the Clermont County Common Pleas Court stated inSlagle, 2008-Ohio-593:
 {¶ 101} "[The legislature] has not abrogated final judicial decisions without amending the underlying applicable law. Instead, the [legislature] has enacted a new law, which changes the different sexual offender classifications and time spans for registration requirements, among other things, and is requiring that the new procedures be applied to offenders currently registering under the old law or offenders currently incarcerated for committing a sexually oriented offense. Application of this new law does not order the courts to reopen a final judgment, but instead simply changes the classification scheme. This is not *Page 30 
an encroachment on the power of the judicial branch of Ohio's government." Id. at ¶ 21. See, also, Byers, 2008-Ohio-5051, ¶ 73-74 (adopting the reasoning of Slagle as its own).
 {¶ 102} In light of the foregoing, we find that Senate Bill 10 does not violate the separation-of-powers doctrine.
 CRUEL AND UNUSUAL PUNISHMENT {¶ 103} As a Tier II Sex Offender, appellant is required to register for 25 years. Appellant argues that the 25-year registration period is excessive and violates the prohibition against cruel and unusual punishment. We disagree.
 {¶ 104} The Eighth Amendment of the United States Constitution and Section 9, Article I of the Ohio Constitution prohibit the imposition of cruel and unusual punishment. In Cook, the supreme court held that the registration and community notification provisions of former R.C. Chapter 2950 were not punishment or punitive in nature. Cook,83 Ohio St.3d at 417, 423. Rather, these provisions were remedial in nature, designed to ensure public safety. Id.; see, also, Williams,88 Ohio St.3d 513; Ferguson, 2008-Ohio-4824. Based on the holding inCook, the Third and Seventh Appellate Districts found that the protections against cruel and unusual punishment were not implicated; thus, Senate Bill 10 did not violate the prohibition against cruel and unusual punishment. In re Smith, 2008-Ohio-3234, ¶ 37; Byers at ¶ 75. We agree.
 {¶ 105} Likewise, the fact that the registration period is longer under Senate Bill 10 than it was under former R.C. Chapter 2950 "does not impact the analysis. As long as R.C. Chapter 2950 is viewed as civil, and not criminal, remedial and not punitive, then the period of registration cannot be viewed as punishment. Accordingly, it logically follows that it does not constitute cruel and unusual punishment since the punishment element is lacking." Byers at ¶ 77.
 {¶ 106} We therefore find that Senate Bill 10 does not violate the prohibition against *Page 31 
cruel and unusual punishment.
 DOUBLE JEOPARDY {¶ 107} Appellant argues that Senate Bill 10 violates the Double Jeopardy Clause contained in the Fifth Amendment of the United States Constitution and in Section 10, Article I of the Ohio Constitution. Specifically, appellant argues that because Senate Bill 10 is punitive in its intent and effect, the registration and community notification provisions of the statute unconstitutionally inflict a second punishment upon a sex offender for a singular offense.
 {¶ 108} The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Section 10, Article I of the Ohio Constitution likewise provides that "[n]o person shall be twice put in jeopardy for the same offense." "Although the Double Jeopardy Clause was commonly understood to prevent a second prosecution for the same offense, the United States Supreme Court has applied the clause to prevent a state from punishing twice, or from attempting a second time to criminally punish for the same offense. The threshold question in a double jeopardy analysis, therefore, is whether the government's conduct involves criminal punishment."Williams, 88 Ohio St.3d at 528 (internal citations omitted).
 {¶ 109} As noted earlier, the supreme court in Williams found no merit with the argument that former R.C. Chapter 2950 violated the Double Jeopardy Clause. The supreme court explained that since former R.C. Chapter 2950 was remedial and not punitive, it could not violate the Double Jeopardy Clause:
 {¶ 110} "This court, in Cook, addressed whether [former] R.C. Chapter 2950 is a `criminal' statute, and whether the registration and notification provisions involved `punishment.' Because Cook held that [former] R.C. Chapter 2950 is neither `criminal,' nor a statute that inflicts punishment, [former] R.C. Chapter 2950 does not violate the Double *Page 32 
Jeopardy Clauses of the United States and Ohio Constitutions."Williams at 528.
 {¶ 111} Since we found earlier in this decision that Senate Bill 10 is a civil, remedial statute, and not a criminal, punitive statute, the above analysis in Williams applies. We therefore find that Senate Bill 10 does not violate the Double Jeopardy Clauses of the United States and Ohio Constitution. See In re Smith, 2008-Ohio-3234, ¶ 36, 38;Byers, 2008-Ohio-5051, ¶ 103; and Slagle, 2008-Ohio-593, ¶ 54.
 CONCLUSION {¶ 112} In light of all of the foregoing, we find that the classification and registration provisions of Senate Bill 10 do not violate the Ohio Constitution's ban on retroactive laws, nor do they violate the Ex Post Facto Clause of the United States Constitution. Senate Bill 10 does not violate the doctrine of separation of powers; does not violate the prohibition against cruel and unusual punishment; and does not violate the Double Jeopardy Clauses of the United States and Ohio Constitutions. Further, based upon the supreme court's decision in Hyle, 117 Ohio St.3d 165, Senate Bill 10's residency provision does not apply to a sex offender who bought his home or resided in a home and committed his offense before July 1, 2007, the effective date of the residency provision. The residency provision also does not violate the Ex Post Facto Clause of the United States Constitution. Finally, appellant lacks standing to challenge the constitutionality of the residency provision on due process grounds.
 {¶ 113} The trial court, therefore, did not err by classifying appellant under Senate Bill 10. Appellant's assignment of error is overruled.
 {¶ 114} Judgment affirmed.
BRESSLER, P.J., and POWELL, J., concur.
[1] For a more detailed overview of the three sets of provisions under former R.C. Chapter 2950, see State v. Cook, 83 Ohio St.3d 404,1998-Ohio-291; and State v. Williams, 88 Ohio St.3d 513,2000-Ohio-428.
[2] See, also, Hyle v. Porter, 170 Ohio App.3d 710, 2006-Ohio-5454, overruled on other grounds in Hyle, 117 Ohio St.3d 899 (Although the rule affirmatively restrains or disables in the sense that convicted sex offenders may not live within 1,000 feet of a school, we cannot say that this restriction rises to the level of restraint that constitutes punishment. We note that the rule does not physically restrain or otherwise impede sexually-oriented offenders from [1] traveling through school zones, [2] entering these areas for employment, or [3] conducting commercial transactions within the zone. Moreover, the rule does not prohibit an offender from owning, renting, or leasing a home within 1,000 feet of a school. Sexually-oriented offenders are simply prohibited from living within 1,000 feet of a school. The restriction does not affirmatively disable or restrain offenders so severely as to be penal).
[3] In Mikaloff, after being ordered by prosecutors to move out of his residence because it was within 1,000 feet of a school, the plaintiff sought to enjoin the enforcement of Senate Bill 10's residency provision against him. The plaintiff had committed his sex offenses and resided in his home before the effective date of the residency provision. We find that Mikaloff is not applicable to the case at bar. Unlike in the case at bar, the plaintiff in Mikaloff was ordered to move out of his residence because it was within 1,000 feet of a school. Thus, the plaintiff sought to avoid suffering an actual deprivation of his property rights by operation of the residency provision. Further,Mikaloff was decided before the Ohio Supreme Court's decision inHyle. *Page 1